# WILSON v. IRISH.

1. **Contract for Land**: RESCISSION AFTER POSSESSION TAKEN. The grantee of real estate under a contract, after he has taken possession, cannot have the contract rescinded because his grantor has fraudulently, and in violation of the contract, kept him out of possession for a time. He will be remitted to his action at law for his damages for the detention.

2. **Evidence**: BREACH OF WARRANTY: DECLARATIONS OF PERSON IN POSSESSION. In an action for a breach of warranty in the conveyence or real estate, the declarations of the person in possession, as to the right by which he holds possession, are admissible in evidence as a part of the *res gestae*.

3. ——: HANDWRITING: STANDARD OF COMPARISON. Where the evidence of the genuineness of a letter was meager and unsatisfactory, it was error to admit it in evidence as a standard of comparison whereby the jury should determine the genuineness of another letter alleged to have been written by the same person.

4. ——: CONVERSATION IN PRESENCE OF ANOTHER: QUESTION FOR JURY. Where a conversation occurred in the presence of a party, it was not for the witness or the court, but for the jury, to determine from all the circumstances whether the party heard the conversation or not.

5. ——: CONVERSATION BETWEEN PARTIES: QUESTION FOR JURY. Where a remark made by defendant to plaintiff was material, if made *before* the delivery of a deed, but the evidence was conflicting as to whether it was made before or after, the evidence concerning the remark should all have gone to the jury, and it was for the jury to determine whether it was made before or after the delivery.

6. ——: BREACH OF WARRANTY: BURDEN OF PROOF. In an action for a breach of warranty in a conveyence of land, where the breach complained of was a prior conveyance to another, the burden of proof to establish such prior conveyance was upon the plaintiff.

7. **Conveyance**: QUIT-CLAIM DEED: WHAT IS NOT. A conveyance which employs the words—"have bargained, sold and quit-claimed, and by these presents do bargain, sell and quit-claim * * * * * all our right, title and interest, estate claim and demand, both at law and in equity, and as well in possession as in expectancy," is not a mere quit-claim deed. See *Sibley v. Bullis*, 40 Iowa., 429.

8. **Damages**: BREACH OF COVENANT OF WARRANTY. In an action for a breach of covenant of warranty, the mere fact that there is an outstanding superior title, which has never been hostilely asserted, will not authorize the recovery of the consideration money.

*Appeal from Van Buren Circuit Court.*

FRIDAY, DECEMBER 7.

THE plaintiff brings this action for the recovery of damages for an alleged breach of warranty in a conveyence of certain real estate, situated in the state of Missouri. The defendant, by way of cross petition, alleges that the land described in the petition was traded to plaintiff in part consideration for some land conveyed to the defendant by plaintiff, and that the plaintiff fraudulently extended the time of a lease upon said premises, whereby the defendant was kept out of the possession of the premises for one year, to his great damage. Defendant prays that the trade may be rescinded and canceled. The defendant thereupon moved to transfer the cause to the equity docket, for the reason that it involves equitable issues. The motion was overruled. The plaintiff filed a demurrer to the cross-petition, which was sustained. The trial was to a jury, and resulted in a verdict and judgment for plaintiff for $1,722.46. The defendant appeals. The cause was before us on a former appeal. See 57 Iowa, 184.

*Stiles & Beaman* and *Wright, Cummins & Wright*, for appellant.

*Robert H. Starr* and *Wm. M. Walker* and *C. C. Cole*, for appellee.

DAY, CH. J.—I. The first error insisted upon is the sustaining of the demurrer to the cross petition, asking a rescission of the trade. The trade between the parties was made on the 27th day of March, 1875. In August, 1874, Wilson leased to Brown, for the period of one year from the 1st of March, 1875, the premises by Wilson conveyed to the defendant. This lease contains the following reservation: "Wilson reserves the privilege of selling the farm and giving possession at any

1. CONTRACT for land: rescission after possession taken.

time *after one year.*"  The defendant alleges in his cross-petition that, when the lease was exhibited to him, pending the negotiation, the italicised words were not in the lease, and that they were fraudulently added after the terms of the trade were agreed upon, and before the execution and delivery of the deeds, and that by reason of this fraud the defendant was kept out of possession for one year.  This action was commenced in February, 1877, and this cross-petition was filed September 27th, 1877; so that, as appears from the cross-petition, the defendant had been in possession for eighteen months when the cross-petition was filed.  The defendant, having taken and held possession of the property, cannot rescind the trade because he was kept out of possession for a time, but will be remitted to his action at law for damages.  The demurrer to the cross-petition was properly sustained.

II.  The plaintiff testified that about the middle of April, after he received his deed for the Missouri land, he went to the land to see it, and found one John Finch living on it and plowing it.  Against the objection of defendant, the plaintiff was permitted to testify that "Finch said that he was in possession from W. S. Gatling; that he got possession from Gatling.  This action is assigned as error.  The evidence is, we think, admissible, under the principles announced in 1 Greenleaf on Evidence, §§ 108-9.

2. EVIDENCE: breach of warranty: declarations of person in possession.

III.  The plaintiff testified that he received two or three letters from Finch.  He was then shown a letter as follows:

"GREENTOP, SCUYLER Co., Mo., June 12, 1876.

"MR. WILSON:  Yours of the 6th is at hand.  You wanted to know if I consider Mr. Gatling the owner of the farm.  I do consider him the owner of it.  I still hold the rent money till it is settled.          Yours truly,

"JOHN FINCH."

The witness testified:  "I don't think I ever saw Finch

write, nor any letter that I knew he wrote. I can say that I know that is his handwriting." The witness was then asked how many letters in all he had received from Finch, and answered: "I guess two or three." The witness was then shown the following letter:

3. ——:
hand writing: standard of comparison.

"GREENTOP, December 27th, '75.

"MR. WILSON:—

"*Sir:* Time is drawing near to settle the rent of the Irish farm. If you have any objection of me settling with Mr. Gatling please let me know. In haste.

"JOHN FINCH, Greentop, Mo."

The witness testified as follows: "I got this letter through the mail. * * I think I was there the February following its receipt."

Q.—State whether this letter had anything to do with your going down there?

A.—I think I complied with his request.

Q.—When you was down in Missouri, did you have any conversation with him about having written to you about this matter?

A.—I presume I did.

Q.—What did he say about it—about having written to you?

A.—I couldn't say exactly what he said.

Q.—You recollect that he did say something about having written; what is your best recollection?

A.—My impression is that he did.

Thereupon the plaintiff offered the letters in evidence. The defendant objected. The court held that the letter of date, June 12th, 1876, might be introduced as evidence, and the letter of December 27th, 1875, might be introduced for the purpose of comparing with it the letter of June 12th, to show who wrote it. This action is assigned as error. It is to be observed that there is no proof whatever of the genuineness of the letter of June 12th, except what arises from a comparison of it with the letter of December 27th. The evidence of the genuineness of the letter of December 27th is very

meagre and unsatisfactory. The witness first answers that he thinks he did not see Finch and talk with him about the letters after they were written. Afterward he says he presumes he had a conversation with Finch about having written him, and that his *impression* is that Finch said *something* about it. In regard to the admission of papers for the mere purpose of furnishing the jury a standard of comparison, it is said in 1 Greenleaf on Evidence, § 580, that the modern English decisions are clearly opposed to it, and in section 581 the rule as extracted from American decisions is declared to be: "That such papers can be offered in evidence to the jury only when no collateral issue can be raised concerning them, which is only when the papers are conceded to be genuine, or are such as the other party is estopped to deny, or are papers belonging to the witness, who was himself previously acquainted with the party's handwriting, and who exhibits them in confirmation and explanation of his own testimony." It is clear that the letter of December 27th, 1875 does not fall within this rule. We think there was error in the admission of each of the letters in question.

IV. The evidence tends to show that, before the conveyance to the plaintiff, the defendant contracted the land to one Gatling, and executed a deed, which was deposited with one Moore as an *escrow*. The defendant testified to a transaction which occurred afterward at the office of Moore, in which he claims that this contract was rescinded, and the deed was surrendered to him. Moore was introduced as a witness. His attention was directed to this occurrence, and he was asked: "What was said there at the time about the trade being rescinded?" To this he answered: "There was a remark made by Irish—Gatling was in the room; I can't tell whether he heard the remark or not. My impression at the time was that he did not. He was about as far as from me to the counsel there. There was nothing occurring to prevent his hearing. My reason for thinking he did not was, that Irish spoke in a suppressed

tone, between a whisper and a loud tone." The witness was then asked to state what was said, and, upon plaintiff's objection, the witness was not permitted to answer. In this ruling we think there was error. The defendant had the right to be corroborated by a person present at the transaction about which he had testified. It was not for the witness nor the court, but for the jury, to determine from all the circumstances whether Gatling heard what occurred in his presence.

V. Rutledge Lea, who drew the papers between the plaintiff and the defendant pertaining to their trade, was introduced as a witness for defendant, and testified that he heard a conversation between Wilson and Irish about the Missouri land about the time the deeds were made, during the time they were making the trade, and that Irish said that the Missouri land was not worth more than $500. Upon cross-examination the witness said: "I think Irish said the land wasn't worth over $500 after the deeds were delivered. The deeds were right on the table. I can't say there had been a manual delivery of them. They were completed, but I don't know as Wilson had picked them up." The plaintiff thereupon moved to withdraw from the jury all of the evidence of this witness relating to Irish's remark about the value of the Missouri land, because the statement was made after the transaction was completed. The court sustained the motion. The defendant, with reference to this same transaction, testified that this statement was made by him when they were discussing the amount of consideration to be put in the deed. This evidence should have been allowed to go to the jury, and it should have been left for them to determine whether or not the statement was made before the transaction was completed. Even if made immediately after the deeds were delivered, the remark would be admissible as part of the *res gestae*. And, if Wilson made no reply, or manifested no surprise, it would tend to corroborate the testimony of Irish, that he "told Wilson several times that the Missouri land was not worth to exceed $500.

VI. During the trial of the cause, a question arose as to the burden of proof, and the court held that, if plaintiff never took possession of the premises and defendant never placed him in possession, then the burden was on defendant. The same doctrine was announced in instructions. The petition is somewhat indefinite. It does not clearly appear whether the plaintiff seeks to recover at all upon the ground that the defendant never had title to the land. The petition, however, does allege 'as a specific ground of complaint that, when the plaintiff attempted to take possession of the Missouri land, he found one Gatling in possession under a purchase from defendant prior to plaintiff's purchase.

So far as this particular breach is concerned, it admits by implication that the title was at one time in defendant, and claims that it was divested by sale to Gatling. The answer simply denies the allegations of the petition. Under the pleadings in this case, we think the burden of proof is upon plaintiff, in so far as the alleged conveyance to Gatling is concerned. See *Jerald v. Elly*, 51 Iowa, 321.

VII. Before the alleged conveyance from defendant to Gatlin, the defendant executed a title bond to one Morgan, which the defendant afterwards foreclosed, thus divesting Morgan's title. The defendant insists that the deed to Gatling was a mere quit-claim, passing, not the title to the land, but simply the defendant's interest therein. The deed to Gatling employs the words, "have bargained, sold and quit-claimed, and by these presents do bargain, sell and quit-claim  *  *  *  all our right, title and interest, estates, claim and demand, both at law and in equity, and as well in possession as in expectancy." This deed is not a mere quit-claim. See *Sibley v. Bullis*, 40 Iowa, 429.

VIII. The court instructed the jury as follows: "If you find that defendant did not have title to the Missouri land at the time he conveyed the same to plaintiff, then you will find for plaintiff on his cause of action, and will assess his damages at the purchase price of said

6. ——: breach of warranty; burden of proof

7. CONVEYANCE: quit-claim deed: what is not.

8. DAMAGES: breach of covenant of warranty.

land, with six per cent. interest thereon." This instruction entirely ignores the defendant's claim, that the plaintiff took possession of the property and rented it to Finch. The mere fact that there was an outstanding superior title, which had never been hostilely asserted, would not authorize the recovery of the consideration money. 3 Washburn on Real Prop., 478.

Many other objections have been urged to the judgment, but we think what has been already said indicates our general view of the case, and may render the other questions immaterial upon the retrial. For the reasons assigned, the judgment is

REVERSED.