HENRY BREMHORST, Appellee, v. PHILLIPS COAL COMPANY, Appellant.

**DAMAGES: Measure of Damages—Failure to Quitclaim Mineral Rights.**
1   The measure of damages for breach of contract to quitclaim to the surface owner of lands "the right to coal and minerals" under the lands is not the difference between the value of the land *with* and *without* the coal and mining rights existing against the land as an incumbrance, when the unit fee has theretofore been separated into (1) a fee to the surface, (2) a fee to the minerals, and (3) a fee to the right to vertical support, and the two latter fees have been conveyed to other parties and paid for.

**FRAUDS, STATUTE OF:   Interest in Real Estate—Oral Contract—**
2   **Part Payment.** Principle reaffirmed that part payment of the purchase price on an oral contract for an interest in land takes the contract out of the statute of frauds.

**TRIAL:** Reception of Evidence—Evidence on Stricken Plea. After
striking from a pleading a claim for damages, error necessarily results from receiving evidence as to the claim and leaving the instructions in such form that the jury may give consideration to such evidence in arriving at their verdict.

**TRIAL:** Instructions—Assumption of Fact—Treating Receipt as Contract. A court must carefully refrain from stating or even inferring that a naked receipt for money constitutes a contract, the issue of contract being sharply in dispute.

**TRIAL:** Reception of Evidence—Undue Advantage to Party. On the issue whether an oral contract was in fact entered into, the court must not allow one party to testify to his intention and understanding and refuse the other party the same right.

**PLEADING:** Answer—Denial With Defendant's Version. A defendant is under no obligation to prove *his version* of what a contract really was, even though he pleads such version, when the plaintiff's plea of the contract has been met by a general denial. (See Book of Anno., Vol. 1, Sec. 11114, Anno. 40.)

**TRIAL:** Instructions—Assuming Issuable Fact—Existence of Contract. Instructions must not assume the existence of a contract the existence of which is distinctly in issue.

**TRIAL:** Instructions—Statement of Issues. It is fundamental that instructions must clearly place before the jury the conflicting contentions of the party litigants.

Headnote 1: 40 C. J. p. 959. Headnote 2: 27 C. J. p. 353. Headnote 3: 38 Cyc. p. 1624. Headnote 4: 38 Cyc. p. 1661. Headnote 5: 13 C. J. p. 768 (Anno.); 22 C. J. p. 611. Headnote 6: 13 C. J. p. 748 (Anno.) Headnote 7: 38 Cyc. p. 1661. Headnote 8: 38 Cyc. p. 1608.

Headnote 2: 3 L. R. A. (N. S.) 804; 25 R. C. L. 576. Headnote 4: 14 R. C. L. 738. Headnote 7: 14 R. C. L. 738. Headnote 8: 14 R. C. L. 728.

*Appeal from Wapello District Court.*—W. M. WALKER, Judge.

JANUARY 18, 1927.

Action at law, to recover damages for the breach of an alleged contract to execute to plaintiff a quitclaim deed for "rights to coal and minerals" underlying a tract of land of which the plaintiff was the surface title holder. The cause was tried to a jury, which returned a verdict of $6,407.50, which

the court reduced to $5,000, for which it entered judgment. Defendant appeals.—*Reversed.*

*F. G. Orelup* and *C. W. Whitmore,* for appellant.

*Jaques, Tisdale & Jaques,* for appellee.

DE GRAFF, J.—This action is for damages predicated on the breach of an alleged contract between plaintiff and defendant. In brief, the plaintiff pleads that it was agreed that the defend-

1. DAMAGES: measure of damages: failure to quitclaim mineral rights.

ant was to execute to plaintiff a quitclaim deed for rights to coal and minerals underlying 27.219 acres of land, located outside the city limits of Ottumwa, Iowa, for a consideration of $100, of which $50 was paid to the defendant at the time of the agreement, and that, then and there, the defendant signed the following written instrument, known in the record as Exhibit G, to wit:

"$50.                                    Ottumwa, Iowa, May 19, 1919.

"Received from Henry Bremhorst fifty dollars for part payment on an agreed price of $100 for a quitclaim deed from us to all rights to coal and minerals under about 28 acres of land near Center School House.

                                   "Phillips Coal Co.;
                                   "By Henry Phillips, Prest."

The defendant, in answer, denied that any contract was entered into between the parties, as alleged and claimed by the plaintiff, and asserted that the plaintiff proposed to pay $100 to defendant for a quitclaim deed covering the rights to coal in that portion of his land from which the coal had been mined; and that the receipt for the $50 was given with the understanding that a definite contract, to be represented by a quitclaim deed, should be prepared by the plaintiff, which should describe the land according to such understanding. It is further alleged, in answer, that, upon receipt of the plaintiff's draft of the quitclaim deed, it was discovered by the defendant that the said deed called for coal which had not been mined out; that thereupon the defendant tendered back the $50 to plaintiff, which tender the defendant kept good; that the defendant relied upon the oral assurance of plaintiff that all he desired for the $100 was a quitclaim deed for mining rights in land lying along the north

road, running "east and west from the Center School House, and under which the coal had been mined out;" that the consideration was nominal, and would not apply to any land having coal under it; and that, "either by mistake, fraud, or error, plaintiff misled the defendant as to the true location of his land."

It is undisputed that plaintiff is the title holder in fee of the land in question by deed of May 3, 1915, "except all coal, mining and other rights now owned by the Phillips Fuel Company," obtained under deed dated November 11, 1905, from Ellen Armstrong, trustee of Elizabeth Hale, who died in 1901; that the land is subject to a certain easement acquired by the defendant by duly recorded deed, March 9, 1911, through its predecessor, the Phillips Fuel Company; that defendant became the owner of the right to mine coal under said land, which right was dominant to plaintiff's land, as evidenced by the recorded deed; that the title to a part of plaintiff's land is also subservient to a recorded coal lease, known as the Erskine lease, which the defendant had executed, July 6, 1914. It is shown that the defendant was the owner of the right or easement of vertical support, in that the grantor, in deed of March 9, 1911, had sold the right of waiver of damages from the surface owners for any damages to the surface caused by the removal of coal.

Much of the complaint in the record with regard to the rulings of the trial court in the admission of evidence and the instructions given and refused arises from the failure to differentiate a receipt from a contract, as applied to the writing Exhibit G, and also the failure of the court to recognize the right of vertical support in the defendant. Of these matters we will speak later.

The material question on this appeal involves the rule or measure of damage to which the plaintiff is entitled by reason of the alleged breach of contract to execute the deed. It is clear that the subject-matter of the alleged contract refers to an interest in and concerning real estate; but part payment of the purchase price on an oral contract takes the contract out of the statute of frauds. Section 11286, Code of 1924; *Sykes v. Bates,* 26 Iowa 521; *Chamberlin v. Robertson,* 31 Iowa 408. We are not concerned, therefore, with the rule that the statute of frauds must be invoked either by plea or by objection made at the time

of the introduction of the evidence. *Gilman v. McDaniels,* 177 Iowa 76; *Kerr v. Yager,* 158 Iowa 69; *In re Assignment of Snyder,* 138 Iowa 553; *Holt v. Brown & Co.,* 63 Iowa 319.

The pleaded contract involved only a quitclaim to plaintiff of the "right to coal and minerals." We cannot adopt as the theory of this case that the execution of the quitclaim would have restored to plaintiff the land in the condition in which nature left it. A quitclaim deed merely conveys whatever title the grantor may have, and any implication that he has a good title or any title whatsoever is excluded. It contains no warranty of title. 2 Tiffany on Real Property (2d Ed.) 1692, Section 453.

I. What is the measure of damage, under the facts, for a failure to execute a quitclaim deed by the promisor? The term "damages" in general means the pecuniary compensation or indemnity which the law awards to an injured party for the breach of a contract or a duty. The term involves the idea of a loss that must be made good, and that the party injured shall be put in as good condition as he would have been if the injury had not been inflicted. 3 Elliott on Contracts, Section 2120 *et seq.*

The general principle in all actions for breach of contract is that the verdict must give the plaintiff, in damages, the difference between what he would have had, if the contract had been performed, and what he actually has received. The result reached is that the damages should be such as may fairly and reasonably be considered, either arising proximately and naturally,—that is, according to the usual course of things,—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable and proximate result of the breach. *Hadley v. Baxendale,* 9 Exch. 341; *Griffith v. Burden,* 35 Iowa 138, loc. cit. page 144.

The trial court instructed, in substance, that the measure of damages is the difference in value of the land with the coal and mining rights existing against it as an incumbrance or easement, and the value of the land without such incumbrance. This was error.

To obtain the proper perspective in this case, it is essential to understand the historical sequence of the title to the land in question. Elizabeth Hale, through her trustee, as the owner of the unit of title, created a severance of the fee to surface rights,

mineral rights, and right of vertical support. We may think of her as the erstwhile owner of the three fees now in question: that is, (1) to the surface, (2) to coal, and (3) to vertical support.

Let us suppose that the instant action was prosecuted by Elizabeth Hale. Let us further suppose that, in 1919, the defendant made a valid contract that, in consideration of $100, he would execute back to her a quitclaim deed for the "right to coal and minerals," and had failed to do so. What claim for damages would she have against the defendant? It would have been a sufficient answer on the part of the defendant, under the record facts, in a suit by her for damages, to say that, under a quitclaim deed:

"First, you are not entitled to the value of the coal mined out by me under the north 13 of your 28 acres; second, you are not entitled to the value of the coal under the south 8½ acres now held under lease from me to the Erskines; and third, you are not entitled to the fee for vertical support or for prospective damage to any part of the 28 acres, because, in 1905, for a consideration, you conveyed the coal and mineral rights under 160 acres of land owned by you, including this 28-acre tract, and at that time you sold and conveyed the third fee for vertical support, as well as the second fee to coal rights under all the land."

This would have constituted a complete answer, and a true statement of fact. Elizabeth Hale had received one compensation for damages for both the right of vertical support and the coal, and, having once been fully paid, neither she nor her successor in title could, in justice or in law, demand a second compensation for the same thing.

It is true that, where the owner of a fee conveys rights to coal and minerals, he impliedly reserves the right to vertical support notwithstanding; but, if these fees are severed and separated, a different situation presents itself. A grant of coal and mineral rights does not include implied severance of the right to vertical support. *Mickle & Co. v. Douglas,* 75 Iowa 78; *Collins v. Gleason Coal Co.,* 140 Iowa 114.

Under the instant circumstances, plaintiff had no right to look to the defendant to restore the value of the land as it once was. No special damage is or can be claimed; and it is clear that a quitclaim deed from defendant to the owner of the sur-

face, as to the land from which the coal had been removed, or might be removed, under the terms of the Erskine lease, would not confer upon plaintiff any right to support or damages for deprivation thereof. *Charnetski v. Miners Mills Coal Mining Co.*, 270 Pa. St. 459 (113 Atl. 683).

When the minerals and the surface are owned by the same party, as is ordinarily true, the adverse possession of the surface is also an adverse possession of the minerals; but, when the ownership or possession is severed, the situation is different. See *Wallace v. Elm Grove Coal Co.*, 58 W. Va. 449 (52 S. E. 485, 6 Ann. Cas. 140) ; *Black Warrior Coal Co. v. West*, 170 Ala. 346 (54 So. 200).

In the instant case, there was a severance of the surface or agricultural rights from the mineral rights covered by the easement, and also a separate severance of vertical support. True, we are not dealing with a claim for damages for breach of warranty by reason of an incumbrance; but, were this true,—for instance, a railroad right of way,—the rule of damage is not the difference in the value of the land on account of such incumbrance, and we so held in *Kostendader v. Pierce*, 37 Iowa 645. See, also, *Guthrie v. Russell*, 46 Iowa 269; *Newburn v. Lucas*, 126 Iowa 85; *Dubay v. Kelly*, 137 Mich. 345 (100 N. W. 677); *Curtis v. Brannon*, 98 Tenn. 153 (38 S. W. 1073, 69 L. R. A. 760).

If the plaintiff, when he bought and paid for the surface fee, did not obtain a corresponding reduction in the purchase price to offset prospective damages for which compensation had already been paid, it is chargeable to his own fault. See *Kellert v. Rochester & P. C. & I. Co.*, 226 Pa. St. 27 (74 Atl. 789). In this connection, it may be said that the plaintiff was not buying coal or royalties from the defendant, as this matter was not within the contemplation of the parties at the time the alleged agreement was made. This is quite evident from plaintiff's own testimony.

"Q. Then you went to Henry Phillips with the expectation of buying this mined-out coal land? A. Sure. I didn't consider the coal worth anything to me. Q. You were dealing with him that it was mined out? A. Only as it was told to me by someone else. Mr. Spry told me it was mined out."

It is also true that the plaintiff made no claim to any agree-

ment on the part of the defendant to convey vertical support, nor was this matter within the contemplation of the parties. Plaintiff's alleged contract must be construed as a contract for a release or quitclaim, covering such mining easements as the defendant controlled on May 19, 1919. It could not include the coal previously mined out, and plaintiff was not claiming that it included the coal not mined. It could not include the coal rights which had been conveyed to the Erskines, nor could it include the right to vertical support which had been bought and paid for prior to the acquisition of the surface title by the plaintiff. Plaintiff's own evidence shows that, where the coal was mined out, a release of the easement would not add to the value of the land. No mention of this fact was made by the court in its instructions to the jury, nor was the legal effect of a quitclaim deed of date of 1919 explained to the jury.

II. Plaintiff's original petition alleged that, on or before May 19, 1919, he had agreed to sell the land to one W. J. Neil at an agreed price of $9,000; that the plaintiff should deposit $1,000 to secure the performance of said contract, which sum was to be forfeited to Neil in the event that the deal should fall through by any fault of plaintiff's; that, by reason of plaintiff's failure to secure the quitclaim deed from defendant, plaintiff lost his sale to Neil, and was damaged in certain specified particulars. To these allegations defendant filed its motion to strike, which was sustained. Nevertheless, Neil, as a witness for plaintiff, testified, over proper objection, that he entered into a written contract with the plaintiff, but that said contract could not now be found; that the contract of purchase involved the 28 acres in question; that, before the contract was signed, he had a talk with the plaintiff in regard to a coal lease on this land; that he told plaintiff he did not want the land until the lease was released; that he was willing to take the land at the agreed price, provided that he secured a quitclaim deed to these coal rights. In brief, he testified in full to his negotiations with plaintiff and the terms of the contract and the results thereof to the parties thereto.

3. TRIAL: reception of evidence: evidence on stricken plea.

Neil further testified that he did not consider the coal worth anything to him; that it would have been a detriment since he expected to plat the land in subdivision acre tracts, and did not

want them to be mining under this, causing buildings to settle.

The objections to Neil's testimony relative to his contract with the plaintiff should have been sustained. Furthermore, the defendant requested an instruction that, in the event that there was a verdict for the plaintiff, the jury should not include in it "any damage plaintiff claims to have sustained through the deal he had with Mr. Neil, nor any settlement he may have made with Mr. Neil." This instruction should have been given. The defendant knew nothing about the contract with Neil, or the purpose which plaintiff had in attempting to secure a quitclaim, when he negotiated with plaintiff. Neil's testimony went in without limitation, except a remark by the trial court to an objection entered by the defendant, that the evidence was "introduced for another purpose." This did not aid the jury, nor clarify the situation. It is clear that the jury was not warranted in including any damages plaintiff may have sustained through loss by his alleged bargain with Neil. It is not an element of damage in the instant case, and was collateral to the essential issue. See *Lawrence v. Wardwell,* 6 Barb. (N. Y.) 423; *Stearn v. Hesdorfer,* 9 Misc. Rep. 134 (29 N. Y. Supp. 281, 59 N. Y. St. 713); *Stewart v. Lanier House Co.,* 75 Ga. 582.

In the absence of a specific instruction, the jury might have determined that the recoverable damage could, in part, be based on the failure to quitclaim, in that it deprived the plaintiff of his bargain with Neil, by reason of deprivation of vertical support, and that with a quitclaim deed he would then have a good and marketable title to his 28 acres, suitable for subdivision purposes.

III. In his original petition plaintiff predicated his claimed damage on a breach of an alleged written contract, to wit, Exhibit G. In a statement of the issues to the jury, the court refers to Exhibit G as a written contract, and in Instruction 4, in referring to the allegation of mistake or fraud in the answer of defendant, speaks of the defendant's being "induced to sign and execute whatever contract was made." It is apparent that plaintiff realized that his first position was not tenable; and after the trial of the cause had been in progress for several days, and after vital and sustainable objections had been made by defendant to the introduction of evidence on the then theory of

4. TRIAL: instructions: assumption of fact: treating receipt as contract.

the plaintiff, an amendment to the petition was filed, basing the
cause of action on an agreement partly oral and partly in
writing, as evidenced by Exhibit G. This document cannot be
construed as a contract. It is a receipt. This document did not
in any way identify any particular land, nor did it describe any
parcel of land by state, county, city, or governmental survey,
nor "by any reference contained in it to something else." See
*Boyd v. Ellis,* 11 Iowa 97; *Allen v. Kitchen,* 16 Ida. 133 (100
Pac. 1052); *Hamilton v. Harvey,* 121 Ill. 469 (13 N. E. 210);
*Hall v. Cotton,* 167 Ky. 464 (180 S. E. 779).

It may not be questioned that parties may, by writing, make
admission of a prior oral contract or agreement to sell an inter-
est in land, and an oral contract thus established may be en-
forced. *Allen v. Bemis,* 120 Iowa 172. It was the province of
the court, in the first instance, to construe the writing. *Vaughn
v. Smith & Co.,* 58 Iowa 553. Under the circumstances, the
court should have instructed the jury, as requested, that Exhibit
G, as a matter of law, does not, in and of itself, constitute a
contract, but is a receipt, and was not sufficient to make out a
case for plaintiff, unless "you find, from further evidence and
by the greater weight thereof, that the defendant came to a
definite understanding and agreement." The evidence of plain-
tiff and defendant in this particular is at right angles. The oral
contract in this case "is not to be lightly found or inferred by
the court or jury upon conflicting oral evidence." *Buechler v.
Olson,* 194 Iowa 245.

A receipt is not a contract, and is subject to parol explana-
tion without a plea of fraud or mistake. *Yardley v. Iowa Elec.
Co.,* 195 Iowa 380; *Effron-Kushner & Co. v. American R. Exp.
Co.,* 195 Iowa 1168. There was no burden, as instructed by the
court, that the defendant was under obligation to prove a mu-
tual mistake.

IV. The defendant Phillips was asked, on direct examina-
tion, whether it was his intent or purpose, at the time Exhibit G
was signed by him, to sell to the plaintiff any other than the
exhausted vein of coal. An objection to this
question was sustained. It should have been
overruled. Plaintiff had testified, over objec-
tion, as to what he took for granted to be the understanding of
the defendant Phillips as to where plaintiff's property was lo-

5. TRIAL: recep-
tion of evidence:
undue advan-
tage to party.

cated. It was the duty of the court to give both parties the benefit of the same rules of evidence. The intent and understanding of the parties constitute a very material question in this case, and the court, in one of its instructions, recognized this fact, and told the jury, in referring to the claimed mistake, error, or concealment, as pleaded by the defendant, to determine whether or not "it was the intention of both parties that a quitclaim deed to be executed to plaintiff should convey the coal and mineral rights only to land in which the coal had been mined out."

V. Other instructions given by the trial court are erroneous. In Instruction 4 the court placed the burden upon the defendant to establish, by a preponderance of the evidence, that

6. PLEADING: answer: denial with defendant's version.

there was a contract to execute to plaintiff a quitclaim deed for the mineral rights to land other than and located differently from that stated in plaintiff's petition, and that the defendant was induced to sign and execute whatever contract was made, through mistake, etc. There was no such burden upon the defendant to prove a contract, nor did the defendant sign or execute any contract. The burden of proof was on the plaintiff throughout to establish his contract as he alleged it. *Olson v. Shuler,* 203 Iowa ——. The making of the contract alleged by plaintiff was put in issue by the defendant by a general denial, and the burden was upon the plaintiff to prove the contract in issue. The fact that the defendant pleaded its version of the contract did not place the burden on it, nor compel it to prove that some other contract was made.

Again, in Instruction 5 the court said that it was conceded that the contract, if any was made, was a contract for a quitclaim deed to *land* owned by the plaintiff, consisting of 28 acres

7. TRIAL: instructions: assuming issuable fact: existence of contract.

near the Center schoolhouse. It was not so conceded. The answer denies the contract, and the evidence of the defendant disputes the contract pleaded by the plaintiff. The evidence does show that the defendant coal company was the successor of the Phillips Fuel Company, and it was conceded that the coal company would stand for any liability against the fuel company; but the court, in Instruction 12, states that the evidence in this record shows that the contract, as claimed by plaintiff, was

made in the name of the Phillips Coal Company alone. The jury might assume, from this statement, that the contract, as claimed by plaintiff, was made. If the court had in mind Exhibit G, then the jury should have been instructed that that writing was a receipt, and not a contract.

VI. It is the claim of defendant, as part of the alleged agreement, that the plaintiff was to prepare and execute the quitclaim deed in question and submit it to the defendant for approval. This was denied by plaintiff, although the fact is in evidence that the plaintiff did tender to the defendant for its signature a deed of bargain and sale, which did not merely call for a quitclaim of legal title of the rights in easement then owned (May 19, 1919), but of all "interest, estate, claim, and demand, both in law and equity," and not only of rights in possession, but in expectancy, and declared "the intention to be to release all right, title, and interest, which said grantors may have in said premises by reason of the coal lease executed by Ellen Armstrong, executrix and trustee to the Phillips Coal Company, dated November 11, 1905."

8. TRIAL: instructions: statement of issues.

It is clear that the defendant was under no obligation to execute any kind of a deed that plaintiff might demand, and it is also true that plaintiff was under no legal obligation to prepare and tender a deed for execution by the defendant unless that was a part of the agreement. *Prichard v. Mulhall,* 127 Iowa 545.

If·the jury so found, under conflicting evidence, that the fact claimed by the defendant was true, then the plaintiff did not present for acceptance a proper deed, but did present a deed that demanded considerably more than he was entitled to. *Wilson v. Irish,* 62 Iowa 260. This phase of the case was not presented to the jury by an instruction, nor was the jury permitted to find that the final and formal agreement between the parties was to be evidenced by a writing, to wit, a quitclaim deed, as defined by statute. In other words, unless it may be said that there was a meeting of minds as to the subject-matter under consideration, no enforcible contract was ever made between them. The minds of the parties may meet upon some things and fail to meet upon others. *Petersen v. Jensen,* 189 Iowa 400; *Lynn v. Richardson,* 151 Iowa 284. This phase of the case

should have been specifically submitted, although the court did instruct the jury that ''it is for you to determine what the agreement between these parties, in fact, was.''

The views as herein expressed on the points relied upon by the appellant for reversal compel a reversal, and the judgment entered is—*Reversed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.