Kenneth L. DeWAAY, d/b/a Heart of Iowa
Popcorn Company, Appellant,

v.

Francis J. MUHR, Appellee.

No. 52945.

Supreme Court of Iowa.

July 18, 1968.

# 455

Tesdell, Miller & Rydell, Des Moines, for appellant.

Coppola & Trout, Des Moines, for appellee.

GARFIELD, Chief Justice.

This is a law action by Kenneth L. DeWaay, d/b/a a Heart of Iowa Popcorn Co., a popcorn processor, to recover damages from Francis J. Muhr, a farmer, for breach of his contract to plant, grow and deliver popcorn. At the close of plaintiff's evidence there was a directed verdict for defendant. From adverse judgment thereon plaintiff has appealed. We reverse.

In considering the propriety of the directed verdict we view the evidence in the light most favorable to plaintiff. Authorities for this need not be cited. Rule 344(f)2, Rules of Civil Procedure.

The petition alleges plaintiff and defendant entered into a written contract on April 8, 1965 whereby defendant agreed to grow popcorn on 188 acres of land operated by him and to sell and deliver it to plaintiff for $1.75 per hundred weight on the cob; that subsequent to the contract date the parties orally amended it by plaintiff's allowing defendant to divert 88 acres to some other crop and agreeing to pay $2 per cwt (on the cob) for all popcorn grown on the remaining 100 acres; as the contract required, plaintiff purchased and delivered to defendant the seed to be used, at a cost of $240; defendant diverted all his lands to other crops and has not tendered or delivered to plaintiff any popcorn in compliance with his contract, to plaintiff's damage in the sum of $9000.

Defendant's answer admits execution of the written contract, denies other allegations of the petition and alleges the parties mutually rescinded the contract and plaintiff failed to advance money to defendant as required by the contract. Plaintiff's reply denies the new matter in the answer.

I. Defendant's motion to direct verdict asserts as grounds: (1) insufficient proof the minds of the parties met on the terms and conditions of any contract; (2) the contract was rescinded by a letter from defendant to plaintiff dated April 20, 1965; (3) plaintiff, it is said, testified he did nothing to mitigate his damages; (4) the measure of plaintiff's damage, if any, is provided by section 554.68 Code 1962 and is the difference between the contract price and the market price of the popcorn at the time it was to be delivered and there is no evidence of such market price; (5) any

damages to be awarded would be based on conjecture.

The court sustained the motion "for the reasons urged." Perhaps the court felt all grounds of the motion were good. However, he did not dispose of it by separate ruling on each ground as required by Rule 118, Rules of Civil Procedure. Because of the nature of the ruling plaintiff's brief and argument attempts to demonstrate no ground of the motion was good.

■ As pointed out on page 752 of 1 Cook's Iowa Rules of Civil Procedure and in many of our opinions, Rule 118 was adopted to avoid the necessity of an appellant's counsel doing what was done here. Counsel on both sides and this court are entitled to know the real grounds on which a motion to direct or dismiss is sustained so the arguments on appeal may be confined to those grounds. Nesci v. Willey, 247 Iowa 621, 629, 75 N.W.2d 257, 262; Mooney v. Nagel, 251 Iowa 1052, 1055, 103 N.W.2d 76, 78; Barnes v. Bovenmyer, 255 Iowa 220, 223, 122 N.W.2d 312, 313.

Defendant's brief makes no attempt to sustain the court's ruling on the ground the contract was rescinded. This ground is so clearly without merit we give it no further attention.

Defendant makes some attempt to uphold the ruling on the grounds of insufficient proof the minds of the parties met on the terms of the contract and that plaintiff failed to mitigate his damages. It is clear, however, defendant relies mainly on grounds four and five of his motion, supra, relating to the question of damages. His argument concludes with the assertion the ruling was proper since there was no evidence of the market price of popcorn at the time the contract was breached and any damages awarded would be speculative and conjectural.

We first consider grounds one and three, supra, of the motion to direct. As we have indicated, the ruling cannot be supported on either ground.

II. As stated, execution of the contract stands admitted in the pleadings. There is clear evidence the contract was modified by subsequent oral agreement in three respects, all at defendant's request or suggestion.

■ Defendant regretted having entered into the contract and asked to be released from it. This plaintiff refused but he did consent that the land to be planted to popcorn be reduced from 188 to 100 acres, the agreed payment be increased from $1.75 per cwt to $2.00 and that defendant's bank, rather than plaintiff, would finance his purchase of a farm and planting of crops. The jury could find that as thus modified the written contract remained in effect as evidenced by defendant's taking delivery from plaintiff of the popcorn seed the latter had purchased and by statements by defendant to plaintiff in September when the latter first learned the seed had not been planted. There is evidence defendant then admitted he should have planted the seed and apologized to plaintiff for not having done so.

■ The right to modify a written contract by a subsequent oral one is well established. Central Ready Mix Co. v. John G. Ruhlin Constr. Co., 258 Iowa 500, 505, 139 N.W.2d 444, 447, and citations; 17A C.J.S. Contracts § 377, page 433 (1963 vol.); 17 Am.Jur.2d., Contracts, sections 469, 470, page 941. The new contract consists not only of the new terms agreed upon but of as many of the terms of the original contract as the parties have not abrogated by their modification agreement. Ibid, section 470; 17A C.J.S. Contracts § 379. See also Hawkeye Clay Works v. Globe & R. F. Ins. Co., 202 Iowa 1270, 1274, 211 N.W. 860.

■ III. Defendant did not plead in defense that plaintiff failed to minimize

his damages. It was plaintiff's duty to minimize his damages but defendant was under the duty to plead and prove the damages could be minimized. Since defendant pleaded no mitigating circumstances he is limited to circumstances shown or growing out of plaintiff's testimony. Sections 619.-7, 619.8 Codes 1962, 1966; Lannom Mfg. Co. v. Strauss Co., 235 Iowa 97, 106, 15 N.W.2d 899, 903; Shewry v. Heuer, 255 Iowa 147, 154, 121 N.W.2d 529, 533; Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 121–122, 143 N.W.2d 312, 317–318.

See also Vawter v. McKissick, Iowa, 159 N.W.2d 538, filed June 11, 1968, an action by a landlord against his tenant to recover rent for the portion of the leasehold after the latter had wrongfully abandoned the premises. See generally 25 C.J.S. Damages § 142 (1966 vol.), and citations notes 36.10 and 37; 22 Am.Jur.2d, Damages, sections 291, 292.

Defendant argues plaintiff made no attempt to contract for popcorn in the open market when he first learned in September defendant had not planted the seed furnished him. In this connection plaintiff testified: "It is customary in the popcorn business to contract with farmers for the delivery of crops. Almost all of the popcorn grown in the United States is contracted with the farmer in the Spring, * * *. A very small percentage of the overall popcorn production in the United States is what we call open-interest corn, where the farmer goes out and grows the popcorn on his own and hopes to sell it later in the Fall. There is some, but not very much. Popcorn is not traded on the open market with futures and so on like the soybean business is."

Plaintiff also testified he did not know of any open market popcorn available in 1965; "to my knowledge, there was not any open-market corn available in the same variety that was delivered to Mr. Muhr (for seed) in the year 1965. I do not know of any other popcorn variety than that which was tendered to Mr. Muhr and which was available in 1965."

When defendant informed plaintiff he had not planted the seed furnished him he told plaintiff the best thing he could then do was try to contact *the producer* he knew who had popcorn not under contract; defendant tried to call this producer but he wasn't home so defendant gave plaintiff his name; defendant also told plaintiff again he would try to get "this guy" and have him contact plaintiff. So far as shown defendant made no further effort to communicate with his producer acquaintance. There is also no evidence the popcorn this producer would have to sell was the same variety, or similar thereto, as that plaintiff processed and furnished seed to defendant to grow. Nor is there evidence the other producer would be willing to sell to plaintiff. It is somewhat significant defendant, who farmed 1200 to 1500 acres in 1965, referred to only one producer of whom he knew who had popcorn not under contract in September of that year.

Another circumstance bears on this question of mitigation of damages. In the fall of 1964 plaintiff advertised in an Atlantic, Iowa newspaper for open market popcorn. The only one to respond to the "ad" was defendant from whom plaintiff purchased the 50,000 pounds the former had for sale. This furnishes some support for the testimony very little popcorn is grown which is not contracted for in the spring.

■ We cannot hold mitigating circumstances are shown as a matter of law by plaintiff's testimony or by circumstances growing out of such testimony. See Code section 19.8 and precedents cited supra in this division.

IV. We consider now grounds four and five of the motion to direct involving the question of damages.

Defendant argues and the trial court apparently was of the view plaintiff could re-

cover nothing because there was no evidence of the market price of popcorn between October 1 and November 15, 1965, the time the contract fixed for delivery upon plaintiff's orders. The argument is based upon paragraph 3 of section 554.68 Code 1962. The section reads:

"1. Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

"2. The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract.

"3. *Where there is an available market for the goods in question* the measure of damages, *in the absence of special circumstances showing proximate damages of a greater amount,* is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, * * *." (emphasis added.)

It is conceded the new Iowa Uniform Commercial Code, chapter 554 Code 1966, which applies to transactions entered into and events occurring after July 4, 1966, has no application to the present case.

■ It is to be noticed paragraph 3 of 554.68 by its terms applies only (1) "Where there is an available market for the goods in question" and (2) "in the absence of special circumstances showing proximate damages of a greater amount." Only where these two conditions exist does the statute limit the buyer's measure of damages to the difference between the contract price and the market or current price. The jury could find neither of these conditions prevailed here, if the statute were to be applied.

"Goods" is defined in the pertinent part of section 554.77 Code 1962, part of the

Sales Law defendant relies upon, to include "emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale."

Here there were no growing crops at any time. The seed plaintiff furnished defendant was never removed from the bags. Defendant totally breached the contract by failing to plant the seed, not by failing to deliver popcorn that had been planted, germinated and grew from the seed. Nothing ever came into being to which the contract to sell the crop could attach. See Michigan Sugar Co. v. Falkenhagen, 243 Mich. 698, 220 N.W. 760, 761 and citations; In re Miller, 244 Mich. 302, 221 N.W. 146, 147.

■ To find the appropriate measure of recovery here it appears necessary to turn to the general law of damages for breach of contract. There are various statements of the general rule, all of much the same meaning.

25 C.J.S. Damages § 74, page 843 (1966 vol.), states that for failure to perform a contract in general "the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed." Id., pages 849–850, adds: "Specific rules are subordinate to the general rule that compensatory damages are designed to put the injured party in as good a position as he would have had if performance had been rendered as promised; a given formula is improvidently invoked if it defeats a commonsense solution."

22 Am.Jur.2d, section 47, contains this: "a party to a contract who is injured by its breach is entitled to compensation for the injury sustained and * * * to be placed, in so far as this can be done by money, in the same financial position he would have occupied if the contract had been per-

formed. * * * Otherwise stated, the measure of damages is the actual loss sustained by reason of the breach, which is the loss of what the promisee would have made if the contract had been performed, less the proper deductions."

We have quoted with approval and adopted the above general rules from C.J. S. and Am.Jur.2d in In re Estate of Carter, 254 Iowa 138, 142–143, 116 N.W.2d 419, 422; Brown v. Farm Bureau Life Ins. Co., 259 Iowa 235, 238–239, 144 N.W.2d 110, 112. See also C. C. Hauff Hdwe., Inc. v. Long Mfg. Co., 260 Iowa 30, 148 N.W.2d 425, 427.

We have also approved the rule of the venerable English decision, Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Reprint 145 (1854): such damages as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach. Bremhorst v. Phillips Coal Co., 202 Iowa 1251, 1255, 211 N.W. 898, 902 (cited with approval in the Hauff Hdwe. case, supra); Gildner Bros. v. Ford Hopkins Co., 235 Iowa 191, 197–198, 16 N.W.2d 229, 233.

While it has been said Hadley v. Baxendale lays down two rules, the better view seems to be that the second part of the rule is sufficient to cover all cases of breach of contract for it must be presumed the parties would contemplate that the party injured by the breach would sustain such damages as would fairly and reasonably, in the usual course of things, result therefrom. See 22 Am.Jur.2d, Damages, section 56, page 88.

In this view the rule of Hadley v. Baxendale does not materially differ from that stated supra in C.J.S. and Am.Jur.2d, and adopted in the recent Iowa decisions before cited, nor from the second paragraph of section 554.68, quoted supra, "2. * * *

the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract."

On the right to recover profits flowing from a breach of contract, 25 C.J.S. Damages § 43 (1966 vol.) states: "Under most authorities, as a general rule a party not in default is, in case of a breach of contract due to the fault or omission of the other party, entitled to recover profits which would have resulted to him from performance. * * * the loss of profits must be the natural and proximate, or direct, result of the breach complained of and * * * capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made; absolute certainty is not called for or required."

Of course recovery of the injured party is limited to the loss he actually suffers by reason of the breach; he should not be placed in a better position than he would be in if the contract had not been broken; 25 C.J.S. Damages § 74, page 849 (1966 vol.); 22 Am.Jur.2d, Damages, section 47, page 74.

We think application of the foregoing considerations to the record here would have warranted submitting to the jury the extent of plaintiff's loss from defendant's alleged breach of the contract, including the present value of the net profits plaintiff would have made had the contract been performed, plus his reasonable expense for seed already incurred in part performance of his contract obligation. See 22 Am.Jur.2d, Damages, sections 160, 174; 25 C.J.S. Damages § 43 (1966 vol.). There is clear proof of the cost of seed.

It is true the amount of plaintiff's damages cannot be computed to a certainty but we think the evidence, including that offered which should have been received, affords a reasonable basis from which the amount may be approximated.

■ Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated. Natkin & Co. v. R. F. Ball Construction Co., 255 Iowa 1156, 1167, 123 N.W.2d 415, 422 (and other citations). See also 22 Am.Jur.2d, Damages, section 25; 25 C.J.S. Damages § 28, pages 684–693 (1966 vol.).

There is testimony defendant told plaintiff in the spring of 1965 he planned to fertilize his 100 acres and would get about 3000 pounds, on the cob, per acre; this would make a total of about 225,000 pounds of shelled popcorn from the 100 acres; the popcorn is dried, shelled, cleaned and placed in 50-pound bags for sale; there is evidence of the price plaintiff obtained from the sale to a large user and other customers of similar popcorn produced in 1965 and of the expense plaintiff incurred in processing and selling popcorn from his plant.

From this and other evidence it should not be necessary to resort to conjecture in order to make a reasonable approximation of the net profit plaintiff would have made from the popcorn defendant contracted to produce and deliver.

■ The action is at law, not triable de novo here. Our discussion of the evidence was not in order to determine questions of fact but for the purpose of determining sufficiency of the evidence for submission to the jury and as an aid to the trial court in event of a retrial. Upon consideration of all questions presented, the cause is

Reversed and remanded.

All Justices concur.