THE FARMERS' MILLING Co. v. MILL OWNERS MUTUAL
FIRE INS. Co., Appellant.

**Mutual insurance:** LEVY OF ASSESSMENTS:   CANCELLATION OF POLICY.
1   The board of directors of a mutual insurance company has
    no authority to confer on the secretary power to levy an as-
    sessment under Code, section 1706, and failure of an assured to
    pay an assessment made by the secretary is not ground for
    ·cancellation of the policy.

**Defenses:** ESTOPPEL.  Where a mutual insurance company denied
2   liability for a loss, solely on the ground that the policy was
    suspended by reason of non-payment of an assessment ille-
    gally levied, it could not, after suit was begun and costs
    incurred, amend its answer and ·base its nonliability on a
    different ground.

*Appeal from Kossuth District Court.*—HON. W. B. QUAR-
TON, Judge.

WEDNESDAY, APRIL 12, 1905.

ACTION on policy of insurance resulted in judgment as
prayed, and defendant apeals.—*Affirmed.*

*Berryhill & Henry,* for appellant.

*Sullivan & McMahon* and *E. A. Morling,* for appellee.

LADD, J.—The defendant was organized as a mutual insurance company under title 9 of the Code of 1873, and as such on June 1, 1898, issued the policy under which the loss

1. MUTUAL IN-
SURANCE: levy
of assess-
ments; cancel-
lation of pol-
icy.

occurred. The only defenses interposed are (1) that the policy was in a state of suspension at the time the property was burned; and (2) that it had been cancelled. Under the plan of insurance prescribed by the articles of incorporation and by-laws, each person applying for a policy executed to the company a note equal to the premium on the indemnity proposed for one year, at the maximum rate established on the risk, and upon the issuance of the policy this note became the basis for an equitable assessment of sums necessary to pay losses and the expenses of operation. The articles provided for assessments " on the semiannual and annual anniversary of the issuance of the policy and in such amount as may be directed by the board of directors." The amount of plaintiff's note was $225, and on the 2d day of December, 1901, the secretary undertook to levy an assessment thereon to pay losses and expenses, amounting to $67.50. Due notice of this was given by registered letter, and under the articles the policy would have been suspended on January 2, 1902, had there been a legal assessment. But the amount had not been directed by the board of directors, and the evidence leaves it doubtful whether the secretary had been instructed by it to fix the same. This, however, is immaterial, for the authority of the board could not be delegated to him. *Garretson v. Ass'n,* 93 Iowa, 402. Moreover, this article must be construed in connection with section 1706 of the Code, which required that:

The directors shall as often as necessary, after receiving notice of any loss or damage, determine the sums to be paid by the several members thereof as their respective portions of such loss, assess the same against them, respectively, and notify them thereof in such manner as they shall determine

or the by-laws prescribe; but the sum to be paid by each member shall always be in proportion to the original amount of his premium note, and be paid to the officers of the company within thirty days after the giving of said notice.

This is mandatory in terms, and there is no reason for supposing that the authority of making assessments conferred on the directors was not intended to be exclusive. Having directed the particular act to be performed by certain officers of the corporation, under the chapter of which the above section is a part, the power is by clear implication denied to others. The point was not raised in *Fee v. Nat. Masonic Acc. Ass'n,* 110 Iowa, 271. · The secretary, then, could make no assessment, and his action in the matter was without authority.

II. The action was begun September 4, 1902, and the defendant answered on the 20th of the same month, expressly averring that "on the 28th day of January, 1902, said

2. Defenses: estoppel.

policy was cancelled for nonpayment of the assessment aforesaid." More than a year later, October 15, 1903, an amendment was filed, in which No. 10 of the articles of · incorporation was set out, providing that "the policy of a member may be cancelled in the discretion of the board of directors, or executive committee or secretary." The record up to that time leaves no doubt of defendant's claim of having canceled the policy because of the nonpayment of the alleged assessment. The secretary had written to defendant on January 20, 1900, requesting a remittance of the assessment, saying: "If we do not hear from you within a few days the policies will be cancelled." Again, on the 28th of the same month, he wrote that: "The semiannual assessment made on your deposit notes Nos. 2811 and 2891 representing policies of the same date and number remain unpaid at this date, therefore we have this day cancelled policies Nos. 2811 and 2891 and have drawn the amount of said assessment with your *pro rata* of losses and expenses from your guaranty

which has entirely exhausted the same as you will notice by the statement of account herewith enclosed." A statement was included, showing assessments exactly equal to the fifty per cent. of defendant's note paid in as a part of the guaranty fund. The fire occurred January 31, 1902, and on the 2d day of February defendant's attorneys wrote to counsel of plaintiff, advising them of defendant's denial of liability, and added:

You will see by reference to article 14, that when an assessment has been made and notice thereof sent, as therein provided, a failure to pay such assessment to the Secretary at his office within thirty days from the time such notice is mailed, operates to suspend the policy of the member. Notice was sent to the Farmers' Milling Company of Algona, Iowa, December 2d, 1901, of an assessment made on that day. This assessment has never been paid, and the policy became suspended January 2d, 1902. It was formally cancelled January 28th, 1902. You will find that on the first day of January, W. E. Hawkins, as miller of the Milling Company, wrote the Insurance Company that the attention of the Milling Company had been called to the registered letter of December 27th. On the 2d day of January, the insurance company acknowledged receipt of such letter, and on the 20th day of January wrote the Milling Company calling attention to the suspension of its policy and on the 28th of January, wrote the Milling Company of the cancellation of such policy. You will see from the foregoing that the Insurance Company did far more than it was required to do in order to keep the policy in question in force, and the secretary of the company greatly regrets that the Milling Company has put itself in the unfortunate position which results from its neglect, followed by the fire.

The letter, as a whole, leaves no doubt as to the ground of cancellation. Only on that theory could the secretary having regretted " that the Milling Company has put itself in the unfortunate position which results from its neglect." And this conclusion is emphasized by the long delay in pleading the cancellation under article 10. After distinctly and definitely resting denial of liability upon the ground that

the policy was suspended and cancelled because of the non-payment of assessments, the defendant cannot be permitted, after suit has been begun and costs incurred by plaintiff, to mend its hold, and assert some other ground of defense. *Donley v. Porter,* 119 Iowa, 545; *Hawes v. Swanzey,* 123 Iowa, 51. " Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration." *Railroad Company v. McCarthy,* 96 U. S. 258 (24 L. Ed. 693); *Continental Ins. Co. v. Waugh,* 60 Neb. 348 (83 N. W. Rep. 81); *Power v. Monitor Ins. Co.,* 121 Mich. 364 (80 N. W. Rep. 111). Appellant contends that it matters not what reason was given for the cancellation; the real question being, was the policy canceled? But the validity of the cancellation depends upon the ground on which it was based. The secretary did not pretend, nor did defendant, until long after this action was begun, that he canceled the policy for any other reason than the nonpayment of the assessment. This was his only reason, and, having rested thereon his claim that cancellation had been effected, the company will not be permitted, after the assured has accepted the challenge implied in the denial of liability by bringing suit, to evade the issue, and allege a new ground of defense, not previously contemplated.—*Affirmed.*