WALTER E. SCOTT, Appellant, v. T. M. L. WILSON, Appel-
lee.

**Contracts:** PAROL EVIDENCE: ADMISSIBILITY. In this action to re-
cover money paid on a written contract under an alleged mu-
tual mistake, the plaintiff, having offered oral evidence of com-
munications between the parties leading up to a written modifi-
cation of the original contract, could not object to like evidence
by defendant in response to that offered by him. Besides evi-
dence of the acts and communications of the parties after the
execution of the modification of the contract was admissible,
in so far as it bore on the performance of the agreement, or
tended to show the construction placed upon it by the parties.

**Same:** CONSTRUCTION: SALE OF REAL PROPERTY: PAYMENT OF ASSESS-
MENTS. The parties to this action entered into a contract for
the sale of land which provided for final payment of the pur-
chase price on a certain date, that defendant should then show
good title, and further that the purchaser should pay all taxes
and assessments as they became due. The abstract disclosed
an assessment for drainage purposes at the date of the contract
in a certain sum, and a supplemental contract was made author-
izing plaintiff to retain from the final payment of the land a
sum equal to the assessment. After the date for final pay-
ment further drainage proceedings were had resulting in a much
larger assessment against the land. *Held,* that the contract should
be construed as applying to the date of final payment for the
land and not as embracing subsequent assessments, and that
plaintiff was not entitled to recover the difference from defend-
ant on the theory of mistake.

**Instructions:** PREJUDICE. Where the defendant was entitled to a
verdict in any event an error in the instructions was not preju-
dicial to plaintiff.

*Appeal from Dallas District Court.*—HON. W. H. FAHEY,
Judge.

THURSDAY, OCTOBER 24, 1912.

ACTION at law to recover back money paid by mutual

mistake under the provisions of a written contract. There was a verdict and judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*Burton & Russel,* for appellant.

*White & Clark,* for appellee.

Evans, J.—The action was before us upon a former ·appeal. *Scott v. Wilson,* 150 Iowa 202. On that appeal, however, only the sufficiency of the allegations of the petition was involved; the case being tried as on a demurrer to the petition. After remand of the case, plaintiff filed a substituted petition, and upon issue made the case went to trial. The undisputed facts appearing in the present record differ so materially from those presented by the former record that we can not say that our opinion on the former appeal controls the result on this appeal, as will appear in our · later discussion.

On November 18, 1908, the plaintiff bought of the defendant an eighty-acre farm for an agreed consideration of $4,200. A written contract was entered into, known in the record as "Exhibit A." Such contract contained the following provisions:

And the said party of the second part in consideration of the premises hereby agrees and with the party of the first part to purchase all his right, title and interest in and to the real estate above described, for the sum of forty-two hundred and no-100 dollars and to pay said sum there· for to the party of the first part, his heirs or assigns, as follows: One hundred and no-100 dollars on the execution of the agreement, and the balance of ———— dollars as follows, to wit: Nine hundred dollars when warranty deed to said land and abstract of title thereto showing a clear and perfect record title to said land is delivered to Frist National Bank, Adel, Iowa, in escrow for delivery to the party of the second part, March 1, 1909. Thirty-two hundred dollars March 1, 1909, when said abstract and

deed are delivered to said second party, with interest from March 1, 1909, at the rate of six percent per annum on all such sums as shall remain unpaid, payable annually, till all is paid. And party of the second part shall also annually pay all taxes and assessments that may accrue on said property as they become due or before they become delinquent, not including the taxes for the year 1908, which party of the first part is to pay.

At the time this contract was entered into, it appears without dispute that certain proceedings to establish a drainage district had been commenced, including this land. No work had been done upon the proposed improvement; but the commissioner had filed his report, together with an estimate of benefits to be assessed, including approximately $500, against Wilson's land; and such assessment had been entered upon the records against Wilson and his land. This assessment was made to appear upon Wilson's abstract as an incumbrance when the abstract was delivered to Scott in pursuance of the contract. A dispute arose over the construction of the contract, and this resulted in another contract, known in the record as "Exhibit B," which was entered into December 2, 1908, and was as follows:

Whereas a controversy has this day arose between the parties to the within contract as to which of said parties shall pay the tax and costs of construction of ditch No. Six (6), Washington township, Dallas county, Iowa, and assessed and to be assessed and levied on the south half of the southeast quarter (1/4) of section 17—80—28 in said county described on the within. It is hereby agreed by and between said parties that said second party shall retain in his hands out of his payment of March 1, 1909, an amount of money sufficient to pay the amount of taxes assessed and levied on said land for said drainage purposes, and said sum deposited in the First National Bank at Adel, Iowa, the amount so retained to pay such taxes when due and payable, and if the court shall finally determine said land is not liable for said costs and taxes, said sum of money so retained for said purpose by said party shall be paid to said first party, on the order of the first party

therefor. This memorandum of agreement is made as additional to a certain written contract between said parties named herein, dated November 18, 1908, and made a part hereof.

In February, 1909, a slight addition was made to the assessment against the land, leaving it still within $500. Such was the condition of the record on March 1, 1909, on which date the plaintiff accepted the abstract of title and a warranty deed and remitted to Wilson the balance of the purchase money, less $500. By subsequent proceedings, the exact nature of which do not very clearly appear, an assessment of $1,292 was made against the land and against plaintiff, Scott, as the owner thereof. The plaintiff sues to recover of the defendant the difference between such sum and the sum of $500 already retained. The parties having acted upon the contract, Exhibit B, and, the plaintiff having remitted to defendant the sum of $2,700 as a balance due, he sues to recover back $800 thereof as having been paid by mutual mistake. The contention of defendant is that by the contract, Exhibit B, he only undertook to pay the proposed assessment then appearing upon the record against the land, and that both parties so construed the contract and acted upon such construction. He contends, also, that the alleged mutual mistake, if any, under which plaintiff claims to have paid the final payment existed at the time the contract, Exhibit B, was entered into. The mutual mistake consisted of the mutual belief of both parties that the assessment was approximately $500. This was the belief of the parties when the contract was entered into, and the defendant contends that he would not have entered into the contract except upon such understanding.

I. Considerable oral evidence was received by the trial court over the objection of the plaintiff. We need not deal with these objections in detail. The substituted petition of the plaintiff set up his cause of action in four counts.

One of these pleaded the contract as oral. All of them pleaded the contract as partly written and partly oral. In support of his petition, the plaintiff introduced oral evidence of all the negotiations between the parties leading up to the contract, Exhibit B. The defendant introduced considerable testimony of like character without objection. At a later stage of defendant's evidence, plaintiff began to interpose objections to the competency of the evidence. It is sufficient to say that the evidence thus objected to was responsive to the oral evidence introduced by plaintiff, and he was thereby precluded from objecting thereto.

*1. CONTRACTS: parol evidence: admissibility.*

It is also true that the provisions of the written contract are such that some intrinsic facts were necessary to be shown, in order to enable the court to construe the contract and to apply the same. The line was not very closely drawn between the evidence of such facts and the evidence of oral negotiations leading up to the contract but this line had been lost long before the plaintiff made his objections, and before he had closed his own case. It is to be noted, further, that what was said and done by the parties after the execution of the contract, Exhibit B, was clearly competent, so far as it bore upon the performance of the contract and upon the construction which the parties put upon it. Upon the record before us, we must hold, therefore, that the appellant has no grievance because of the admission of oral evidence.

II. Before proceeding to other features of the case, we may as well construe the written contracts of the parties as applied to the undisputed facts existing at the time they were made. In the record before us on the former appeal, it was made to appear that at the time Exhibit B was entered into, no assessment had been then made, and that none had been made on March 1st, when the plaintiff paid the balance due. This feature of the case was emphasized

*2. SAME: construction: sale of real property: payment of assessments.*

in the opinion in construing Exhibit B. If no assessment had been made at that time, the contract must necessarily be held to refer to a future assessment and not a present one, although the terms of the contract indicate a present tense. It is the undisputed showing on this record that a present assessment did appear against the land. Whether valid or not, it appeared as an assessment upon the record, and was entered upon defendant's abstract as an incumbrance. We must now construe Exhibit B in the light of this fact, and as applicable thereto.

It is to be noted that Exhibit A contained this provision: "And party of the second part, Scott, shall also annually pay all taxes and assessments that may accrue on said property as they become due or before they become delinquent, not including the taxes for the year 1908, which party of the first part is to pay."

The contract, Exhibit A, also provided that the defendant should furnish an abstract "showing a clear and perfect record title." These two provisions furnished the occasion for the dispute between the parties. Whether they were in conflict or not depends upon the construction to be put upon the contract. Whether the mere pendency of drainage proceedings, without more, would constitute a breach of a contract for a perfect title, we need not consider. But a purported assessment having been actually entered upon the record created at least a cloud, and this furnished the occasion for controversy in good faith. Although the contract, Exhibit A, provided that the second party should pay all taxes and assessments except the taxes of 1908, the term "assessment" could fairly be construed as referring to future assessments and not to existing ones, in view of the provision that the first party was to furnish a perfect title on March 1, 1909. Under this construction the defendant would be liable for assessments actually then made, and the plaintiff for assessments to be made in the future.

Turning now to Exhibit B, its preamble recognizes

a distinction between taxes "assessed" and those "to be assessed." The undertaking of the defendant, however, is confined in terms to the taxes "assessed." There are three possible constructions to this part of the contract, which may be indicated by the interpolation of bracketed words as follows:

(1) "It is hereby agreed by and between said parties that said second party shall retain in his hands out of his payment of March 1, 1909, an amount of money sufficient to pay the amount of taxes [now] assessed and levied on said land for said drainage purposes." (2) "It is hereby agreed by and between said parties that said second party shall retain in his hands out of his payment of March 1, 1909, an amount of money sufficient to pay the amount of taxes [then] assessed," etc. (3) "It is hereby agreed by and between said parties that said second party shall retain in his hands out of his payment of March 1, 1909, an amount of money sufficient to pay the amount of taxes [to be at any time hereafter] assessed and levied," etc.

The plaintiff contends for the third construction above indicated. If the first or second be adopted, the plaintiff can not recover. Inasmuch as there was a tax "assessed" at the time the contract was entered into, the natural import of the terms used would readily apply to such a tax alone, were it not for the fact that the defendant was to furnish a clear title on March 1st. This latter provision of the contract would invite the second construction. As between the first and second, we need not determine, because the result must be the same in either case. Inasmuch as there was an existing assessment, and inasmuch as the defendant was able to furnish a clear record title on March 1st by the payment of $500, we would not be justified in adopting the third construction above indicated. This view renders Exhibit B consistent with Exhibit A. It was intended as an agreed interpretation of Exhibit A. The plaintiff himself put this construction upon it. Such con-

struction is also equitable whereas the other construction is grossly inequitable. The construction of the improvement had not been begun when the contract of sale was entered into. None of the benefits of the improvement ever accrued to the defendant. The large assessment subsequently made was wholly for benefits accrued to this land since the sale. These were assessed to the plaintiff Scott as the owner thereof, and such benefits accrued to him alone.

It will be noted, also, from the terms of Exhibit B that it was provided that "if the court shall finally determine said land is not liable for said costs and taxes, said sum of money so retained for said purpose by said party shall be paid to said first party." This was the only contingency provided for in express terms.

The claim of mutual mistake is not available to plaintiff. The alleged mutual mistake was the mistaken belief of both parties. If the plaintiff acted upon it in paying the balance of the purchase price, the defendant also acted upon it in entering into the contract, Exhibit B. If the plaintiff is entitled to relief on account of such mistake, the defendant would be likewise entitled to relief for the same mistake. If the construction contended for by plaintiff should be adopted, then the defendant through the same mutual mistake incurred an obligation which he never dreamed of, and which he would not have incurred consciously. If both parties should be relieved from the consequences of such mutual mistake, it would eliminate Exhibit B, and the rights of the parties would have to be determined under the express provisions of Exhibit A.

Construing Exhibit A alone, it is clear that the plaintiff has had all that he is entitled to. We reach the conclusion, therefore, that upon the undisputed facts the defendant was entitled to a verdict, and the trial court could properly have so directed.

III. Considerable argument has been directed by ap-

pellant against certain instructions of the trial court numbered 5, 6, and 7. In view of our conclusions an-

**3. INSTRUCTIONS: prejudice.** nounced in the foregoing paragraph, we have no need to deal further with specific excep-

tions. Perhaps we ought to say, however, that the exceptions to the noted instructions are well taken. Instruction 5 advised the jury that the terms of the contract, Exhibit B, taken in their ordinary and usual import, obligated the defendant to pay all the taxes which had been or should be levied. But it submitted to the jury to say whether the parties intended "that said contract should have different and other effect than the effect which the language employed would usually and ordinarily have." This proposition was amplified to some extent in the other instructions. It was clearly erroneous. But, inasmuch as the defendant was entitled to a verdict in any event, the error in the instructions can not be deemed prejudicial.

The judgment below must therefore be—*Affirmed.*