J. G. MAASDAM, Appellee, v. JEFFERSON COUNTY FARMERS MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 43445.

JULY 31, 1936.

REHEARING DENIED DECEMBER 17, 1936.

Calhoun & Calhoun, and Richard C. Leggett, for appellee.

Thoma & Thoma, for appellant.

KINTZINGER, J.—Plaintiff was a member of and had a fire insurance policy with the defendant, Jefferson County Farmers Mutual Insurance Association. The insurance covered plaintiff's house and all personal property contained therein belonging to him. The building was destroyed by fire on February 3, 1933. The defendant refused to pay the fire loss, and plaintiff commenced this action.

The defendant contends that plaintiff forfeited his right to benefits upon the ground that he failed to pay all assessments levied against him within twenty days after receiving notice thereof. The defendant claims that two assessments of $28.00 and $23.20, respectively, were levied against plaintiff at meetings of the officers and directors in March and October, 1932. The record shows that due notice of these assessments was received by plaintiff in May and November, 1932, and that he failed to pay the same within twenty days thereafter or at any time thereafter.

Appellee contends that no valid assessment was ever levied, and that the assessment notices received by him were, therefore, of no validity.

The defendant's articles of incorporation provide that "the president, vice-president, treasurer and secretary shall constitute the Executive Committee." The articles of incorporation also provide that all assessments are to be made by the Executive Committee of the Association, and plaintiff contends that no such levy was ever made.

Art. V. Sec. 5, of the articles provides that:

"The Executive Committee shall meet quarterly and at other times when called by the President. Three members may constitute a quorum. They shall pass upon claims, adjust losses, look after the financial standing of the Association, * * * determine time and rate of assessments."

The articles of incorporation also provide that:

"The members shall pay their assessments within twenty (20) days from date of mailing the call, and the Association

shall not be liable for any loss such members may sustain while in default.'' (Art. VIII, Sec. 1.)

The lower court held that no valid assessment was ever levied and submitted the case to the jury upon the amount of damages, and a verdict was returned for plaintiff.

Defendant filed a motion for a new trial on the grounds (1) that the court erred in refusing to admit certain evidence offered by the defendant on the question of damages, and (2) that the lower court erred in holding that no valid assessment was ever made. The motion was overruled and defendant appeals.

■■■ I. Appellant contends that the court erred in sustaining plaintiff's objection to questions put to defendant's witness McWhirter as to the reasonable market value of articles of personal property destroyed by the fire.

Appellee, however, contends that the ruling of the court was correct, because the property destroyed consisted chiefly of household goods, furniture, etc., which had no market value. Such a ruling has support in the following cases: Mote v. Railroad Co., 27 Iowa 22, 1 Am. Rep. 212; McMahon v. Dubuque, 107 Iowa 62, 77 N. W. 517, 70 Am. St. Rep. 143; Jeffries v. Snyder, 110 Iowa 359, 81 N. W. 678. Some doubt is cast upon this contention by later rulings, because it is claimed that household goods and furniture are now being sold extensively in second-hand stores, and, therefore, may have a market value. New England Syndicate v. Cutler, 162 Iowa 246, 143 N. W. 1095.

In New England Syndicate v. Cutler, 162 Iowa 246, loc. cit. 250, 143 N. W. 1095, 1096, this court said:

''The reasonable market value of personal property is established when other property of the same kind has been the subject of purchase and sale to such an extent that the value or price becomes fixed in that locality or market, and in this connection you are entitled to give the evidence offered and introduced in this case as to the reasonable market value of the goods, wares, and merchandise in question * * * such weight to which you deem it entitled.''

We are not called upon to determine this question, however, because of the well settled rule of law that where objections to evidence offered on a certain theory have been overruled by the court when offered by one party to the litigation, it becomes ad-

missible on the same theory when offered by the opposite party. Under this rule, where allegedly inadmissible evidence is admitted on one side, similar evidence is rendered admissible to contradict the same. Bank v. Snyder Bros., 79 Iowa 191, 44 N. W. 356; Ingram v. Wackernagel, 83 Iowa 82, 48 N. W. 998; Lumber Co. v. Lumber Co., 148 Iowa 207, 127 N. W. 70; Scott v. Wilson, 157 Iowa 31, 137 N. W. 1043; Smith v. Rice, 178 Iowa 673, 160 N. W. 6; Peterson v. McManus, 187 Iowa 522, 172 N. W. 460; Nigut v. Hill, 200 Iowa 748, 205 N. W. 312; Bremhorst v. Coal Co., 202 Iowa 1251, 211 N. W. 898.

The only evidence offered by plaintiff on the value of the household goods and personal property destroyed by the fire consisted of the evidence of himself and his daughter. Much of his evidence related to its "*reasonable market value*", and was admitted over defendant's objection. The record also shows that all of the testimony on value given by his daughter related to the "reasonable market value of the property" destroyed, and was all admitted over defendant's objection thereto as being incompetent.

Defendant's witness McWhirter was an auctioneer of many years' experience; had sold numerous articles of household property and furniture similar to that in question, but when he was asked the reasonable market value of such property in that community by defendant's counsel based on his knowledge of similar property, the objection thereto was sustained. Whether the ruling was correct or not, it is the well settled rule of law in this state that the court cannot apply one rule to the admission of evidence in favor of plaintiff, and an opposite rule as to admission of similar evidence by the defendant.

In Lumber Co. v. Lumber Co., 148 Iowa 207, loc. cit. 212, 127 N. W. 70, 72, this court said:

"Moreover plaintiff without objection, first introduced testimony as to his parol agreement, and having thus opened the door, he cannot complain of defendant's testimony relating to the same matter."

In Scott v. Wilson, 157 Iowa 31, loc. cit. 35, 137 N. W. 1043, 1045, this court said:

"It is sufficient to say that the evidence thus objected to was responsive to the oral evidence introduced by plaintiff, and he was thereby precluded from objecting thereto."

In Smith v. Rice, 178 Iowa 673, loc. cit. 684, 160 N. W. 6, 9, this court said:

"Having established this rule of evidence for the trial of the case, it should have been given consistent application throughout."

In Bremhorst v. Coal Co., 202 Iowa 1251, loc. cit. 1261, 211 N. W. 898, 904, this court said:

"It was the duty of the court to give both parties the benefit of the same rules of evidence."

Of similar import are the other cases hereinabove cited.

In the case at bar the court, over defendant's objection, admitted testimony offered by plaintiff as to the reasonable market value of the property in question. Defendant's objection thereto was overruled. For the purposes of this case, if the evidence was admissible in favor of plaintiff, it was also admissible in favor of defendant. It may also be said that the evidence offered by the plaintiff tended to show the reasonable market value .of the property in question. This testimony being introduced on behalf of plaintiff, it was competent and proper, under the rules announced in the foregoing cases, for the defendant to offer similar evidence in rebuttal thereto. The refusal to admit such evidence was sufficiently prejudicial to constitute error.

■■■ II. Appellant also contends that the court erred in holding that no valid assessment was ever levied by the executive committee of the defendant company, as required by its articles of incorporation.

Art. V, Sec. 5, of the articles provides as follows:

"The executive committee *shall meet (1) quarterly and (2) at other times when called by the president.* * * * They shall pass upon claims, adjust losses, etc., * * * and determine time and rate of assessments."

Art. IV, Sec. 3, provides that the president, vice-president, treasurer and secretary shall constitute the executive committee. This committee, under Sec. 5, Art. V, of the articles, "shall meet *quarterly and at other times when called by the president.*" Appellant contends that because such officers comprise the executive committee, and because they were present at board meetings held on March 15, 1932, and October 8, 1932, when motions

to levy assessments were adopted, that such action was a sufficient compliance with the requirement that the executive committee "determine the time and rate of the assessments."

The record shows that the meeting of March 15, 1932, was a meeting of the officers and board of directors, at which the officers were present.

The defendant's secretary testified that:

"When our members had losses * * * the *board of directors* would meet and determine the amount necessary to * * * pay those losses, and make an assessment upon all the members * * * to pay * * * losses. The minute book shows that the board had a meeting on March 15, 1932."

The defendant offered that part of the record found in the secretary's minute book reading as follows: ·

"March 15, 1932. A call meeting was held at the courthouse of the officers and directors. The meeting was called to order by President W. D. Hudgel. Members present: Long, Kyle, Myers, McCracken, Parrott, Ross, Davis, Ludtke, Bowers, Blough, Maddix, Peebler. *Motion by Kyle, seconded by Parrott, to make an assessment of two and one-half mills May 2nd.* Carried. Adjourned. (Signed) Elmer C. Davis, Secretary."

If this meeting was not a meeting of the executive committee, and if the assessment then made for the losses referred to by the secretary, was not determined by the executive committee, and if that meeting was a meeting of the board of directors as indicated by the evidence of the secretary, then there was no valid assessment, because there is no other evidence of a meeting of the executive committee, at which the amount of the assessment levied as of May 2, 1932, was determined.

The motion made on March 15, 1932, to levy an assessment as of May 2, 1932, was made by Mr. Kyle, and seconded by Mr. Parrott, neither of whom was an officer or member of the executive committee, although both were members of the *board of directors*. The only members on the executive committee at that time were the following officers: W. D. Hudgel, president; L. A. Peebler, vice-president; Charles H. Ross, treasurer, and Elmer Davis, secretary.

Another meeting of the board was held on October 8, 1932, at which another assessment was levied as of November 1, 1932.

At that meeting Mr. McCracken, a member of the board, made the motion for the assessment. McCracken was not an officer or member of the executive committee.

All of the officers were also members of the board of directors, but the record shows that the motions for the assessments were made by, voted upon, and carried by the thirteen members of the board of directors. As the officers were also members of the board of directors, it necessarily follows that they, as directors, voted for the motions. It is true that the vice-president, the secretary, and the treasurer testified that when they voted in favor of the motions, they did so as officers and members of the executive committee. It is also true that they testified that those meetings were joint meetings of the officers, directors and members of the executive committee, but the record shows without dispute that the motions for the assessments were not made by any member of the executive committee. On the contrary, they were made by members of the board of directors, *who were not members of the executive committee.*

The "calls" for both of the meetings referred to were issued by the secretary of the association, while the articles of incorporation require that the notices for "called" meetings of the *executive committee* shall be issued by the president, who was the only person authorized to issue calls therefor. Neither of the two meetings referred to was called by the president.

A careful examination of the record fails to show that any assessments were made by the executive committee at any "quarterly" meeting, or at any other meeting of the executive committee "called" by the president. The only inference to be drawn from the evidence in this record is that the meetings at which the assessments were levied were meetings of the board of directors and not of the executive committee. The fact that the officers were present at that meeting would not make it a meeting of the executive committee as such. In fact, no meeting of the board of directors could be held without the presence of the individual members of the executive committee because they were all members of the board of directors. As such an assessment can only be made by the executive committee, as a legal requisite to an assessment, none can be made by the board of directors. Although the officers are also members of the board of directors, their presence at the meetings would not suffice to make them meetings of the executive committee.

As the meetings of March 15 and October 8, 1932, were neither regular nor special meetings of the executive committee, they cannot be considered meetings of that committee, notwithstanding the opinion of the officers that they considered them joint meetings of the board of directors, the officers, and the executive committee. The board must act as a unit and not as individual members, and a determination of the individual members is not a determination of the board. It necessarily follows that the assessments attempted to be made by the directors at said meetings are invalid.

Appellee contends that a forfeiture of benefits for nonpayment of assessments can only be declared when such assessments are made in conformity with the articles of incorporation, and that a failure to pay an assessment not properly levied does not forfeit the holder's rights under his policy.

It is the settled rule of law that where an assessment has not been levied in compliance with the articles of incorporation, it is invalid, and that the insurance under an existing policy cannot be forfeited because of the nonpayment of such purported and invalid assessment. Emmet Co. v. Dally et al., 216 Iowa 166, 248 N. W. 366; 35 Cyc. 1083; Rice & Son v. Plymouth, 43 Iowa 136; Herrington v. District Township, 47 Iowa 11; Underwood v. Iowa Legion, 66 Iowa 134, 23 N. W. 300; Young v. Blackhawk County, 66 Iowa 460, 23 N. W. 923; Ind. School Dist. v. Wirtner, 85 Iowa 387, 52 N. W. 243; Garretson v. Life Assn., 93 Iowa 402, 61 N. W. 952; Steel Company v. Van Buren County, 126 Iowa 606, 102 N. W. 536; Milling Co. v. Insurance Co., 127 Iowa 314, 103 N. W. 207; Ney v. Telephone Co., 162 Iowa 525, 144 N. W. 383; Sargent & Co. v. Heggen, 195 Iowa 361, 190 N. W. 506; Wolcott v. Insurance Co., 77 Neb. 746, 112 N. W. 371.

In Garretson v. Life Assn., 93 Iowa 402, loc. cit. 407, 61 N. W. 952, 954, this court said:

"The rule seems to be well established that 'an assessment can only be valid when laid under the conditions stated in the charter. * * * The liability of a member of a mutual insurance company on his premium note left as a deposit as the basis of an assessment * * * is not an absolute liability to pay the whole amount of his note, but it is conditional, and depends upon the contingency of the happening of losses and expenses to which he shall be liable to contribute, * * *. The promise of the insured is

to pay upon such conditions, and the existence of these conditions must be established affirmatively before a call for the payment of the note or any part thereof can be enforced. * * * The assessment must be made in strict accordance with the authority given. * * *' In making an assessment upon its members, a society acts in a ministerial * * * capacity. No presumption arises in favor of the * * * legality of its assessments. Every fact authorizing an assessment, and every act required of the society, must be performed before an assessment can be levied, which a member must pay, or forfeit his rights of membership. It may be stated, as a general proposition, that, when a society relies upon the failure of a member to pay an assessment, as a forfeiture of his membership and the benefit thereof, it must show affirmatively that the assessment was made by the proper authority * * * in the manner * * * from which it derives its powers to make the assessment * * *. Niblack Mut. Ben. Soc. section 280; Underwood v. Iowa Legion of Honor, 66 Iowa 134, 23 N. W. 300. We are quite clearly of the opinion that the assessment in this case was illegal, irregular, and void, and that no forfeiture can be declared thereon.''

In Farmers Milling Co. v. Insurance Co., 127 Iowa 314, loc. cit. 315, 103 N. W. 207, the *secretary* undertook to levy an assessment against the plaintiff. In that case this court said:

''Due notice of this was given by registered letter, and under the Articles the policy would have been suspended on January 2, 1902, *had there been a legal assessment*. But the amount had not been directed by the board of directors, and the evidence leaves it doubtful whether the secretary had been instructed by it to fix the same. This, however, is immaterial, for the authority of the board could not be delegated to him. Garretson v. Life Assn., 93 Iowa 402, 61 N. W. 952. * * * There is no reason for supposing that the authority of making assessments conferred on the directors was not intended to be exclusive. *Having directed the particular act to be performed by certain officers of the corporation,* * * * the power is by clear implication denied to others. * * * The secretary, then, could make no assessment, and his action in the matter was without authority.''

In Herrington v. District Township, 47 Iowa 11, loc. cit. 13, this court said:

"The question is here presented whether a corporation whose business is transacted by a board of directors can be bound by the assent of a majority of the directors to a contract, expressed otherwise than at a duly convened meeting. We are of the opinion that it cannot. * * * A board must act as a unit, and in the manner prescribed. The determination of the members individually is not the determination of the board. In McCullough v. Moss, 5 Denio 567, 577, the court said: 'The concurrence of a majority of the board when duly assembled is requisite to constitute a valid act. The assent of the several members separately is not enough.' "

Of similar import is Sargent & Co. v. Heggen, 195 Iowa 361, 190 N. W. 506.

In the quite recent case of Emmet Co. v. Dally et al., 216 Iowa 166, loc. cit. 168, 248 N. W. 366, 367, this court, speaking through Justice Mitchell, said:

"The individual members of the board may have been of one mind as to the propriety and expediency of serving such warnings, and may have so expressed themselves in the discussion, but this cannot be said to constitute such an order as is contemplated by the statute. As was said by this court, in Herrington v. District Township, 47 Iowa 11: 'A board must act as a unit, and in the manner prescribed. The determination of the members individually is not the determination of the board.' "

In that case we also quote with approval the following language from Steel Co. v. Van Buren Co., 126 Iowa 606, 102 N. W. 536:

"That the act of the individual members of a public body, even though concurred in by a majority of its members, is not official or binding upon the municipality which they represent, is too well settled for doubt or debate. Young v. Blackhawk County, 66 Iowa [460] 465, 23 N. W. 923; Rice v. Plymouth, 43 Iowa 136; Ind. School Dist. v. Wirtner, 85 Iowa 387, 52 N. W. 243."

It is our conclusion that no other inference can be drawn from the evidence in this case except that meetings of the board of directors were held on March 15 and on October 8, 1932, at which the officers of the association were present. They were not regular meetings of the board of directors. The record shows

172

that they were "called" meetings of the *board of directors*, but that they were neither "regular" nor called meetings of the executive committee.

Under the articles of incorporation the executive committee was the only body authorized to levy the assessments for losses. It may be that all of the officers of the association were present, but if they were, it was in their capacity as directors. Their presence was not as members of the executive committee. The motions for the assessments at each of the meetings referred to were made by members of the board of directors, and not by members of the executive committee.

It is our conclusion that the alleged assessments in question were not determined, made, or levied by the executive committee as such. We are, therefore, constrained to hold that such assessments were invalid. It necessarily follows that no rights under plaintiff's policy were forfeited by plaintiff's failure to pay such assessments within twenty days after receiving notice thereof. There was no error in the lower court's ruling on this branch of the case.

Other questions are presented, but in view of the conclusion reached in this division of the opinion, a consideration thereof is deemed unnecessary.

For the reasons set out in Division I hereof, a reversal of the case is necessary because of the reasons therein expressed.— Reversed.

PARSONS, C. J., and ALBERT, STIGER, and DONEGAN, JJ., concur.