MARTHA B. SMITH, Appellee, v. BAGMEN EMERGENCY FUND
ASSOCIATION of Zeus Guild Ancient Mystic Order of
Bagmen of Bagdad, et al., Appellants.

No. 43499.

NOVEMBER 24, 1936.

Harding, Ruffcorn & Jones and Marvin W. Houghton, for appellants.

George M. Faul and John G. Bowes, for appellee.

ALBERT, J.—To a fair understanding of this case the following facts are deducible from the record.

The Ancient Mystic Order of Bagmen of Bagdad is a fraternal benefit association under the laws of the state of Iowa. The United Commercial Travelers of America is also a fraternal insurance company under the laws of this state.

On the 6th of February, 1909, the Ancient Mystic Order of Bagmen of Bagdad issued a policy of insurance to Seymore J. Smith, who died on the 15th day of April, 1934. Due notice of his death was given to the said Bagmen Association, and such association refused to pay the claim and thereby waived any further notice or proof of death. At the time of Smith's death all dues, assessments, or premiums required upon said policy in that association were paid to date.

The articles of incorporation and by-laws of the United Commercial Travelers in no way recognize or refer to the Bagmen Association. Equally, the articles of incorporation of the Bagmen Association, with one exception, in no way refer to the United Commercial Travelers. They are two separate and distinct corporations, and the only reference in the articles of incorporation and by-laws of one association referring to the other is the following: In the application for membership to participate in the Bagmen Emergency Fund Association of the Zeus Guild A. M. O. B., signed by the deceased, is a certification that he is a member of a certain numbered council of the United Commercial Travelers of America; and,

"I Hereby Agree to accept the Certificate of Membership and receipt so issued, subject to all the provisions, conditions and limitations of the Constitution, By-Laws, rules and regulations of said Association; as they now exist or as they may hereafter be added to, revised or amended.

"I Hereby Agree that withdrawal, suspension or cancellation of my membership in the Order of United Commercial Travelers of America, or in Zeus Guild, A. M. O. B., or failure to keep my dues and assessments paid up in either, automatically cancels my membership in this Association and forfeits all my rights to participate in the benefits of the Bagmen Emergency Fund Association."

Section 9 of Article IV of the articles of incorporation of the Bagmen Association provides:

960

"Any member who allows himself to be suspended, or expelled, for any cause, or who withdraws, either from the Order of the United Commercial Travelers of America or the Ancient Mystic Order of Bagmen of Bagdad, shall stand suspended, expelled, or withdrawn, as the case may be, from this Association."

It is apparent, therefore, that there is no interrelation between the two corporations.

The defense made in the case is that at the time of his death the said Smith was not a member in good standing of the United Commercial Travelers of America subsequent to November 30, 1932, and therefore the defendants are not liable under the policy.

The first question raised is whether or not the deceased was legally suspended from the United Commercial Travelers of America. Article II, section 7, of the Constitution of the United Commercial Travelers of America reads as follows:

"Any member who fails to pay fees, fines, costs, dues or any assessment charged or levied against him, when as same become due and payable, shall immediately on the happening of such default and by virtue thereof become a delinquent member, and he and every person or persons claiming under him and by virtue of his membership, and his certificate of insurance shall likewise, at the time such default occurs and by virtue thereof, forfeit all right to indemnity and benefits of whatsoever character; while he thus continues a delinquent member the sending to him of notice of any assessment or the making of demand on him for any fees, fines, costs, dues or assessments shall not constitute or be deemed a waiver of such forfeiture. * * *

"Should any delinquent member fail to restore himself to good standing within thirty (30) days from the date of such delinquency, the Secretary-Treasurer of his Subordinate Council shall immediately suspend him from membership and insurance in the Order. Such Secretary-Treasurer shall at once notify the Supreme Secretary of such suspension and report the same to his Subordinate Council at its next regular meeting.

"Failure to suspend a delinquent member under the provisions of this Section shall not constitute nor be deemed a waiver of the forfeiture provided for in this Section * * *."

█ █ █ Turning to the record we find that the deceased had not

paid his dues in the United Commercial Travelers of America, and that the secretary-treasurer marked Seymore J. Smith suspended as of date November 30, 1932, for nonpayment of dues in the amount of seven dollars, and that in his monthly report to the supreme council of the order for the month of November he listed S. J. Smith as suspended on November 30, 1932. It is apparent, therefore, that under the afore-quoted section of the constitution of the United Commercial Travelers the said Smith had defaulted in his dues to said association, and that he and every person claiming under him by virtue of his membership, at the time such default occurred *and by virtue thereof forfeited all right to indemnity or benefits of whatsoever character;* that pursuant to said article the secretary-treasurer of the subordinate council did after thirty days from said delinquency suspend him from membership and insurance in the order, and that such secretary-treasurer did at once notify the supreme secretary of such suspension and reported the same to the subordinate council at its next regular meeting. It seems, therefore, that all the requirements of the Travelers Association constitution and by-laws were literally complied with, and that there was a proper and legal suspension of Smith on the 30th day of November, 1932. We are of the opinion that where the articles of incorporation and by-laws provide for the method and manner of suspension of a member they are binding on the member, and if complied with must of necessity result in the legal suspension of such member. We reach the conclusion, therefore, that the deceased was properly suspended by the Travelers Association on the 30th day of November, 1932.

■■■ Turning now to the application of Smith for membership in the Bagmen Association, the material part of which has been heretofore set out, he agreed to accept his certificate of membership subject to all the provisions, conditions, and limitations of the constitution, by-laws, rules, and regulations of said association, etc. He further agreed that "withdrawal, suspension or cancellation of my membership in the Order of the United Commercial Travelers of America * * * or failure to keep my dues and assessments paid up in either, automatically cancels my membership in this (Bagmen) Association." These statements in his application are necessarily a part of his contract with the Bagmen Association. Further than that, section 5 of Article II of the constitution of said association provides that:

"All members who fail to pay when due, all dues or fees, shall be suspended from the Order at a regular meeting of the Guild by Order of the Great Ruler, and any member who allows himself to be suspended or expelled, for any cause, or who withdraws from the Order of the United Commercial Travelers of America, shall stand suspended, expelled, or withdrawn, as the case may be, from the Ancient Mystic Order of Bagmen of Bagdad. Such suspension, expulsion or withdrawal to be of even date with that in the said Order of United Commercial Travelers of America."

The deceased was bound by this provision in the constitution.

■■■ It will be noticed that under this provision if a member allows himself to be suspended or expelled for any cause, or withdraws from the order of United Commercial Travelers of America, such member *shall stand suspended,* expelled, or withdrawn, as the case may be, from the Bagmen Association, and same shall be of even date with that of said order of United Commercial Travelers of America.

In the case of Jelly v. Mutual Aid Society, 120 Iowa 689, 95 N. W. 197, 98 Am. St. Rep. 378, we had something of a similar provision under consideration. In that case the phrase was "shall be suspended"; and it is insisted that the Jelly case is controlling on this question in the present case. We notice this distinction between the two; in the Jelly case the phrase used was "shall be suspended", and we held that the suspension provision was not self-executing, but to effect the suspension there was an affirmative duty on the company; in the present case the phrase used is "shall stand suspended". We think the Jelly case is not controlling, and that the phrase used in the policy under consideration is self-executing,—that is to say, that when the event occurs there is no affirmative duty on the Bagmen Association to take any affirmative action in order to effect suspension.

We see no way of avoiding the proposition that under the quoted articles of the Bagmen Association, when Smith was properly suspended from the United Commercial Travelers of America that operated automatically to suspend him from the Bagmen Association. The articles state that when that event occurs he "shall stand suspended". Taking this in connection

with the agreement contained in his application, his claim under his policy in the Bagmen Association was automatically suspended on the 30th day of November, 1932.

The plaintiff, however, insists that because the Bagmen Association received payments after Smith had been suspended from his membership in the Travelers Association, thereby it waived the provisions with reference to the continuous membership of Smith in the Travelers Association.

■■■ The doctrine of waiver has been so many times passed on in this state that it is needless to cite authority. One fundamental principle of waiver is that a waiver cannot be successfully maintained without the other party's knowledge of the facts. There is nothing in the record in any way showing that the Bagmen Association had any knowledge of the suspension of Smith's membership in the Travelers Association; hence one of the fundamental principles of waiver is wanting. Every time the Bagmen Association made an assessment on its members it gave them notice of the assessment, and when the same was remitted the remittance was accompanied by a certificate as follows:

"I hereby certify that I am a member of ................ Council No. ..........., U. C. T. of A. and in good standing, to be entitled to Bagmen benefits." Signed by the remitter; and when the company issued a receipt for such remittance the receipt recited:

"This receipt is issued with the understanding that you are a member of the U. C. T. of A. in good standing."

This receipt was a warning to the policyholder that the payment was received only in case he was in good standing with the U. C. T. of A., and he had already, over his own signature, certified to the Bagmen that he was such member in good standing in the U. C. T. of A. With this condition of the record it is apparent to any reader that no waiver could be successfully asserted by the policyholder.

The case was tried in equity, and being triable *de novo* here we reach the conclusion that the plaintiff was not entitled to recover under the record made.—Reversed.

PARSONS, C. J., and ANDERSON, DONEGAN, KINTZINGER, RICHARDS, HAMILTON, and STIGER, JJ., concur.