MARIE CRADDOCK, Appellee, v. FIDELITY LIFE ASSOCIATION, Appellant.

No. 44252.

April 4, 1939.

Rehearing Denied September 29, 1939.

Lane & Waterman and E. C. Halbach, for appellant.

Miller & Claussen, for appellee.

HALE, J.—The defendant is a fraternal benefit association organized under the laws of the state of Illinois, operating through local lodges, one of which is located at Clinton, Iowa.

Royce Benjamin Craddock, plaintiff's intestate, died as the result of an accident May 24, 1935. On June 1, 1932, Craddock had become a member of the defendant association by means of a contract dated May 23, 1932. His brother, Rae Craddock, was also the holder of a contract or policy in the same society. The brother, who was the decedent's employer, generally made the payments on both certificates. The application of the deceased was taken by Phil Murphy, solicitor for the Clinton lodge. Murphy quit his employment, and after-

wards checks were received by Harold E. Cram, district manager of the association. All premiums, with the exception of the premium for July 1934, were paid by check, but none were paid for or by Craddock after January 1935. The policy provides for double indemnity for accidental death, and requires monthly payments.

The bylaws of the association have the following provision:

"Sec. 96. If and when any member shall fail to pay the monthly or other periodical payment as provided in his benefit certificate to the Correspondent, or other person duly authorized to receive such payment, within the month or period in which the same is payable, his membership and all rights and benefits under his certificate shall ipso facto and without notice or action of any kind upon the part of the Association, or any of its officers, be and stand suspended, subject to the terms of his benefit certificate and provisions of these laws relating to reinstatement, and all benefits and insurance provided in his certificate shall cease and determine except only such benefits as are specifically provided for under the non-forfeiture provisions, if any, in such certificate."

No question is raised as to the death of the insured by accidental means, or as to the proper furnishing of the required proofs of loss.

Payments on the policy were made for some time, most of the payments being made by Rae Craddock. The payments were frequently late, but, under the custom of the local correspondent, advances were sometimes made out of the lodge funds. Payments were made up to and including the June 1934 payments. Prior to this June payment all the payments had been made, although not always promptly. The July 1934 payment, however, is not evidenced by any check and it is asserted by the plaintiff that this was paid in cash and evidence was offered to that effect. While it is claimed by the defendant that there is no record and no proof of the July payment, yet the jury could have found that it was made. Again in September 1934 there was no payment, nor is there any claim that one was made during that month, but two payments were made, one on October 3, 1934, and one on October 15, 1934, by delivering to Cram the checks therefor. There were then payments on November 19, 1934, and January 7, 1935. The amount and num-

ber of payments, excepting the alleged cash payment in July 1934, is not disputed, but upon the application of such payments there is a disagreement. However, assuming, as is claimed by plaintiff, that the payment of January 7, 1935, was in payment of the November 1934 dues or premium, there is evidence that the premiums on the policy were called for by Cram and that Rae Craddock relied on Cram's paying said premiums when they became due and payable. There was evidence that about the time of the payment of the November premium there was an agreement made between Rae Craddock and Cram that Craddock would thereafter credit the amount of the monthly premiums to Cram's account and Cram would pay the amount of the premiums on the policy; and that on January 7, 1935, Cram called upon Craddock for a premium and at that time stated he would pay the premiums as he had agreed. After the payment by the check on January 7, 1935, Rae Craddock testifies that he relied upon Cram's paying the premiums, and monthly credited on the account of Cram the amount of the premium on the said policy, and that no request was made for payment of any further premiums.

After the death of Royce Craddock proofs of loss were sent the association. On receipt by the defendant of proof of death of the insured the defendant wrote a letter to the plaintiff, as follows:

"Your proof of claim and also Medical Proof received. However, our records show that this member was suspended for non-payment of his November, 1934, premium, consequently. there is no benefit due you under that lapsed certificate."

After such letter was received Rae Craddock, the brother, and James Craddock, the father of the deceased, testify that in behalf of the plaintiff they had an interview with Arthur A. Bently, president of the company, who died prior to the trial, and told Bently that a monthly premium had been paid on said policy on November 19, 1934, and a premium on January 7, 1935, the checks for which had been delivered to Harold Cram, and cashed by the defendant and the proceeds retained. They also told him that Cram had, before the giving of the check on January 7, 1935, agreed to pay the premiums on the policy as they became due, but on January 7, 1935, Cram had asked Rae Craddock to pay the premium which was then due and said that

he (Cram) would be able to pay future premiums when the same became due, and that no further payments were made by Craddock. Craddock stated that Bently told him that he knew nothing of the payment of the premiums by the checks of November 19, 1934, and January 7, 1935, and that he did not know whether Cram had made the monthly payments as he had agreed, and that it made no difference whether the checks were cashed or whether Cram had made the payments, that the policy had lapsed in November 1934, but that he would investigate the matter of the checks and ascertain whether Cram had paid the dues as he had agreed. There is also evidence that James Craddock called Bently by telephone later and inquired whether he had made the investigation, and was told by Bently that the defendant denied liability upon the policy because the policy had lapsed in November 1934. The plaintiff says that, relying upon the ground of such denial of liability, which was the only one defendant was asserting, she employed counsel and went to expense for legal services; and evidence was introduced to that effect. She avers that the premium for November 1934 was paid on November 19, and that also on the 7th of January, 1935, a premium was paid, and that defendant, by accepting and retaining said premiums, waived any right to suspend the insured for nonpayment of the November 1934 premium, and is now barred and estopped from claiming or asserting that said November 1934 premium was not timely paid or that the insured was suspended for nonpayment of premium.

Defendant, for answer to plaintiff's petition, denied the payment of the premium for the month of November 1934, denied that any subsequent premiums were paid, and alleged that the deceased was suspended from membership in December 1934 because of nonpayment of dues. Defendant denied that Cram was an agent of the defendant, and stated that he was merely a solicitor without authority to collect premiums, and alleged that the only person authorized to receive premiums was the correspondent of the local lodge, who at various times advanced payments for members and had done so in this case; that the payment made to the correspondent in the month of November 1934 was made by Rae Craddock, to apply on back payments which had been advanced by the local correspondent, and that Royce Benjamin Craddock was, in December 1934, suspended

for failure to pay dues and was never reinstated and that the remittance made in the month of January 1935 was also applied to the payment of dues advanced by the correspondent. The defendant referred to section 96 of the association bylaws, above set out. Defendant claimed that by virtue of the provisions of said section 96 the insured was automatically suspended, and that at the time of his death he was not a member in good standing and his certificate or policy carried no benefits. Defendant further set up as a part of its answer that the facts stated in plaintiff's petition are insufficient to state a cause of action, and denied any waiver on the part of the association.

Trial was had, and at the conclusion of plaintiff's testimony and also at the conclusion of all the evidence motion for directed verdict for the defendant was filed and overruled.

The jury found for the plaintiff. Exceptions to instructions, motions for new trial, judgment notwithstanding the verdict, and in arrest of judgment, were filed and overruled. Judgment was entered for plaintiff, and from the rulings of the court this appeal is brought.

I. The defendant's first assignment of error and its principal argument is directed to the court's refusal to sustain defendant's motion for a directed verdict and in submitting to the jury the question of whether the defendant was estopped to assert that the certificate was not in force in May 1935, because of any lapse or suspension subsequent to November 1934. To a great extent this is also the basis of defendant's second and third assignments of error.

The principal question, therefore, before this court is whether or not the district court should have directed a verdict for the defendant under the evidence as disclosed at the trial. Was the evidence sufficient to warrant submission to the jury, and was there such a waiver of the terms of the policy in regard to payment of premiums as to work an estoppel on the part of the defendant? The determining question is whether, under the law, such written refusal and such statements as the jury might have found had been thereafter made constitute such waiver as would estop the association from thereafter denying liability for failure to make the subsequent payments. Assuming that all the matters above were found by the jury, in favor of the plaintiff, could the association at this time, or at the time of the trial, deny liability on account of the undisputed

failure to pay the premiums during the first half of 1935? The fact of a promise by Cram to take care of further premiums could not in any event excuse the insured from failure to pay such premiums. Cram's personal promise to make the payments was not in any manner binding upon the association and it was so conceded by plaintiff at the trial, and there is no evidence that such payments were ever made by him or received by the association or that any payments were made after January 7, 1935. See Public Savings Ins. Co. v. Manning, 61 Ind. App. 239, 111 N. E. 945.

■ II. The plaintiff contends that the provisions of a policy and bylaws of a fraternal insurance association that a policy shall lapse and no benefits be payable under it if premiums are not timely paid, without any action being taken by the association to suspend the insured or to forfeit the policy, are for the benefit of the association and may be waived by it. There can be no question about this theory, nor that an insurance association may waive provisions of its policies and bylaws which provide that for failure to timely pay dues the policy shall lapse without any action. The company may waive these provisions of the policy, and also on violation of terms of a policy the acceptance of further premiums will constitute a waiver.

■ It is also a general rule that where an insurance company, having knowledge of another defense which it has, asserts a specific defense to a claim under a policy, it will not be permitted thereafter to shift its ground and assert such other defense after expense of suit has been incurred. These general propositions are sustained by authority.

■ But there is also the question of whether the facts shown constitute such an assertion as to estop the association from urging its defense. The letter which was written by defendant's president, who died prior to the suit, and his statements, are claimed by plaintiff to constitute such an assertion as creates an estoppel and prevents the company from urging as a defense any subsequent failure of the insured to make payment of premiums due. If this be true the defendant is held to a strict rule. The fact that the association made a mistake in the month —and we may assume that the company was mistaken and that there was no default of the November payment—would make an error of only one month, for there was no evidence to go to the jury that either the December 1934 payment or the pay-

ments in 1935 had ever been made, either by Cram or by anyone else. The general reason for refusal to pay the policy was given, which was that the member (plaintiff's intestate) was suspended for nonpayment, and the administratrix was informed definitely that there was no benefit due under the lapsed certificate. Had the letter stated the December payment instead of November, or the January payment, or any other of the payments which had been defaulted, there could be no question of waiver in this case and no foundation for any suit. We hesitate to declare that a mere error in the denial of liability, to the extent shown here by the evidence, would bar an insurance company from defending for failure to make timely payment of the premiums on the policy.

So far as we are informed the question, under facts such as are here shown, has never been decided in this state, but the question of waiver under similar circumstances has been ruled on in other jurisdictions. In the case of Redeman v. Preferred Acc. Ins. Co., 215 Wis. 321, 254 N. W. 515, 518, to which reference is made by both plaintiff and defendant in argument, a very similar situation was shown. This was an action to recover disability benefits under a health policy. The policy differed from the one in suit in that it was effective only for a three-months period, with provisions for renewal, while in the case at bar the policy continued indefinitely but was kept alive only by monthly payments, and ceased, under the provisions of the bylaws, on failure to keep up these payments. The company in the Redeman case determined not to renew the policy and had so instructed its agent. The insured, however, paid the premiums, and later became totally disabled. He made inquiry of the defendant company and the company replied that its records disclosed the policy had expired on June 3, 1931, that the policy had lapsed as of that date and the records showed that it had not been renewed. On a demand from plaintiff's attorney for payment the company again stated that the policy had lapsed on June 3, 1931, and "inasmuch as the insurance was not in force at the time his illness commenced, it will be appreciated that no liability could attach in Dr. Redeman's favor." After the introduction of evidence a motion for a directed verdict in favor of the plaintiff was sustained on the ground that the company was estopped from asserting that the policy was not in force and effective on the date on which

plaintiff became disabled, November 9, 1931, the reasons given by the court being that a custom had grown up which required the company to notify plaintiff when a renewal premium would be due and to have its agent call for the premium, and on the further ground that the company had asserted that the policy had lapsed on June 3, 1931, and could not thereafter defend on the ground that the policy had lapsed on September 3, 1931. This ruling of the court was reversed by the supreme court of Wisconsin, with directions to dismiss the action. After stating that courts do not regard forfeitures of insurance policies with favor, and some discussion as to the time when the policy lapsed, the court goes on to say:

"The plaintiff contends that, where an insurance company refuses on some specific ground to pay a loss, all other defenses are waived. The rule which the plaintiff no doubt seeks to invoke may not be so broadly stated. The correct rule is that, where an insurance company, having full knowledge of another defense which it has, asserts a specific defense to a claim under an insurance policy, it will not be permitted thereafter to shift its ground and assert such other defense after expense of suit has been incurred. Wolf v. District Grand Lodge, 102 Mich. 23, 60 N. W. 445; Taylor v. Supreme Lodge of Columbian League, 135 Mich. 231, 97 N. W. 680, 106 Am. St. Rep. 392; Brink v. Hanover Fire Insurance Co., 80 N. Y. 108; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537; 14 R. C. L. §374.

"On December 18, 1931, evidently in response to an inquiry made on behalf of the plaintiff as to the date of the termination of the policy, the company stated that the policy had expired on June 3, 1931. Again on January 15, 1932, the company wrote the plaintiff that it had no information to offer other than that set forth in its letter of December 18. On July 18, 1932, the company stated, in a letter to the plaintiff's attorneys, that the policy lapsed as of June 3, 1931, and that, 'inasmuch as the insurance was not in force at the time his illness commenced it will be appreciated no liability could attach in Dr. Redeman's favor.' This letter specifically stated that there was no liability on the part of the company because the policy was not in force at the time the plaintiff's illness commenced. Plaintiff's disability commenced November 9, 1931. At the

time the company wrote to the plaintiff's attorneys, it had no knowledge that the June 3 renewal premium had been paid. It, of course, knew that it had not consented to a renewal of the policy on either June 3 or September 3. To hold that the company may not defend on the ground that the policy was not in force on November 9 because it had theretofore stated that the policy had lapsed on June 3 is a step we cannot take. Liability was denied because the policy was not in force when plaintiff's illness commenced. After writing the letter to plaintiff's attorneys, the company did not change its defense or shift its ground, which always had been that the policy was not in force on November 9, 1931. After the company learned of what had occurred in June, it had the right, in our opinion, consistently to assert in defense of the action that the policy was not in force on November 9, because it had not been renewed in September."

The association involved in this action, while not requiring renewal as in the one in the Wisconsin case, did have a provision in its bylaws, which became a part of the policy of insurance, that failure to pay dues automatically lapsed the policy.

Considerable is urged in argument as to whether the policy was void or voidable, but we think that the evidence shows that throughout the defendant treated this policy as not in force. The language of the Wisconsin case seems to us directly to apply to the issue in this case—that is, whether or not there had been a waiver by the mere error in naming the date on which the lapsing of the policy had occurred, and supports our view that there was not such waiver. The plaintiff in the present case knew that the defendant had declined payment, knew that it was upon the ground of nonpayment of premiums, and knew that it asserted that the policy had lapsed. At no time did the defendant assert a defense which was in contradiction of or inconsistent with the position it took at the beginning of the correspondence and negotiations, and that was that the policy was no longer in force, that it had lapsed, and that the company denied liability upon that ground. The evidence fails to indicate that all of the premiums had been paid, and it is not contended that they were. As a matter of fact, the largest number of payments which could have been submitted to the jury and which the evidence disclosed was far less than the

required number. To have kept the policy in good standing it would have required the payment of thirty-six premiums, that is, from June 1932 to May 1935, and no such number of payments was shown, or even claimed, to have been made.

Plaintiff's case must rest upon the asserted waiver. We feel that the company duly apprized the plaintiff of the ground of its refusal to pay the policy and that the mistake of one or two months in the date of the lapsing of the policy could not and did not mislead the plaintiff to her injury; that there was no waiver and no estoppel.

As we view the evidence, there was nothing to indicate a waiver except the mere error in fixing the date of the lapsing of the policy. The alleged conversation with the president of the company added nothing to support the claim which plaintiff makes on account of the letter. This conversation was mainly about the November payment, which was always in dispute, but nothing that Bently said at the time would indicate any waiver of the nonpayment of the subsequent premiums.

The general rule forbidding shifting of ground we do not think applies in this case, for, as indicated, the defense urged by the company was maintained consistently at all times. The case cited by plaintiff, Farmers Milling Co. v. Mill Owners Mutual Fire Ins. Co., 127 Iowa 314, 103 N. W. 207, differs in its facts from the case at bar. In that case the assessment was an illegal assessment and not a valid ground authorizing cancellation. See, also, Maasdam v. Jefferson County Farmers Mutual Ins. Assn., 222 Iowa 162, 268 N. W. 491, and cases cited therein.

Nor can there be much question of the fact that under the policies of the defendant the failure of the decedent to maintain his payments worked a suspension of his rights. This question has recently been considered by this court in the case of Wry v. Modern Woodmen O. A., 222 Iowa 1179, 1188, 271 N. W. 300, 304:

"Wry, even without this notice being sent out, knew the provisions of the by-laws of the defendant. He knew he must pay his dues at the time provided. He knew if he didn't he stood suspended. He knew if suspended that the defendant had no right to take his dues. He knew that no one had the right to waive this provision. He knew, in fact, everything the

by-laws contained, and is chargeable with notice of it, because it was a part of his contract.''

The provisions in the policy for suspension, as shown in section 96 of the bylaws, provide that·on failure to pay as provided, without notice, the certificate shall ipso facto, without notice or action of any kind on the part of the association or any of its officers, be and stand suspended. And this provision has been held to be self-executing. See Smith v. Bagmen E. F. Assn., 222 Iowa 958, 270 N. W. 13, and cases cited, wherein the distinction is made between the words ''shall be suspended'', as in the case of Jelly v. Muscatine City & County Mutual Aid Society, 120 Iowa 689, 95 N. W. 197, 98 Am. St. Rep. 378, and the present phraseology, ''shall stand suspended'', in that the latter works an automatic suspension. See, also, Van Dahl v. Sovereign Camp, 130 Neb. 181, 264 N. W. 454.

Many other matters are urged by defendant, but under our holding as to the question of waiver and the duty of the court to have sustained defendant's motion for a directed verdict, we do not consider it necessary to discuss them. Nor have we referred to the matter of reinstatement provided by the terms of the policy, as to which there was no evidence, and, as a matter of fact, no reinstatement or attempt to reinstate ever occurred. Except for the question of waiver, in order to recover the plaintiff would have had both to plead and to prove such reinstatement.

On the whole case we hold that there was no waiver and no reinstatement, and no evidence that showed complete payments of premiums. The motion for a directed verdict should have been sustained, and for failure so to sustain the motion, the case should be, and it is, therefore, reversed.—Reversed.

MITCHELL, C. J., and STIGER, SAGER, BLISS, MILLER, and RICHARDS, JJ., concur.